Filed 10/28/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LEAGUE OF CALIFORNIA CITIES,<br><br>　　　Petitioner,<br><br>　　v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY,<br><br>　　　Respondent;<br><hr>SAN DIEGANS FOR OPEN<br>GOVERNMENT et al.,<br><br>　　　Real Parties in Interest. | D067969<br><br><br><br>(Super. Ct. No. 37-<br>2014-00000217-CU-MC-CTL) |

　　　PETITION for a writ of mandate challenging an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge. Petition granted, remanded for further proceedings.

　　　Best Best & Krieger, Shawn D. Hagerty, Matthew L. Green and Rebecca J. Andrews for Petitioner.

　　　No appearance for Respondent.

　　　Briggs Law, Cory J. Briggs and Anthony N. Kim for Real Parties in Interest.

The California Public Records Act (Gov. Code, § 6250 et seq., the Act) provides that "a party" may file a petition for the issuance of an extraordinary writ to challenge an order of the trial court either directing or refusing disclosure under the Act. (Gov. Code, § 6259, subd. (c); undesignated statutory references are to this code.) In this case, a nonparty to the action filed a petition for an extraordinary writ in this court arguing it was a real party in interest that would be irreparably damaged by the trial court's order to disclose records allegedly protected from disclosure by the attorney-client privilege and attorney work product doctrine. We conclude the term "a party," as used in the Act, is not limited to an actual party to the action. Accordingly, the nonparty here has standing to file the instant petition challenging the trial court's order.

We further conclude the trial court erred by not conducting an in camera review of the documents as requested by the party asserting the documents were exempt from disclosure. Accordingly, we grant the petition and remand the matter for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Jan L. Goldsmith is the San Diego City Attorney. League of California Cities (League) is an association of 473 California cities and their public officials, which, among other purposes, advocates to protect and restore local control for cities to provide for the public health, safety, and welfare of their residents. The League engages in legal advocacy through its Legal Advocacy Program. The League's Legal Advocacy Committee (LAC) administers the Legal Advocacy Program by reviewing pending appellate cases to determine if the cases involve issues that may impact cities on a

2

statewide basis. The LAC then makes recommendations to the League on whether it should participate in the action or weigh in as amicus curiae on behalf of California cities. The San Diego City Attorney is a permanent member of the LAC.

Real Party in Interest, San Diegans for Open Government (SDOG), submitted a request under the Act to the City of San Diego (the City) seeking "[a]ny and all e-mails sent to or from [Jan Goldsmith's personal e-mail account] . . . between January 1, 2008 and December 31, 2013, and that pertain in any way to the official business of the City of San Diego." Among other records, the City asserted an exemption to the disclosure of e-mails between a purported legal assistant for the League and attorney members of the League (the e-mails) on the grounds they were not public records because they did not concern city business, or were otherwise privileged.

SDOG filed a petition for writ of mandate seeking declaratory and injunctive relief against the City and Goldsmith to compel disclosure of the e-mails. In a minute order, the trial court directed the City to provide SDOG with a privilege log identifying the documents not produced, along with the legal objection for not producing the documents. The City produced a privilege log, identifying and bates-numbering nonresponsive, privileged or exempt documents, which included the e-mails. After SDOG challenged some of the claimed exemptions, the City prepared a further privilege log addressing these documents.

After considering the parties' briefing, the trial court declined to perform an in camera review of the e-mails. It found the City failed to meet its burden of

3

demonstrating that the e-mails were privileged or exempt under the Act, and ordered the City to produce the e-mails by a certain date.

The League filed the instant petition for a peremptory writ of mandate or prohibition in the first instance, or an alternative writ or order to show cause seeking to vacate that part of the court's order requiring disclosure of the e-mails. We stayed the trial court's order and issued an order to show cause.

## DISCUSSION

### I. *Standing*

Subdivision (c) of section 6259 provides that a court order either directing or refusing disclosure is not an appealable judgment or order, "but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ. Upon entry of any order pursuant to this section, *a party* shall, in order to obtain review of the order, file a petition within 20 days after service upon him or her of a written notice of entry of the order, or within such further time not exceeding an additional 20 days as the trial court may for good cause allow." (Italics added.)

The League concedes it was not "a party" to the trial court proceedings, but asserts it has standing to seek writ relief in this court because it holds the privilege to prevent the disclosure of confidential communications with its counsel and is directly and prejudicially affected by the trial court's order to disclose the e-mails. SDOG disagrees, noting that the right to challenge an order under the Act is limited to a "party," which it interprets as meaning an actual party to the action rather than a real party in interest. (§ 6259, subd. (c).)

The issue before us is one of statutory interpretation. Our task is to determine the intent of the lawmakers so as to effectuate the purpose of the statute. (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 749.) We first scrutinize the actual words of the statute, giving them their usual, ordinary meaning. (*Ibid.*) If the statutory language is clear and unambiguous, meaning it is susceptible to only one reasonable construction, courts adopt the literal meaning of that language, unless that literal construction would frustrate the purpose of the statute or produce absurd consequences. (*Ibid.*) When statutory language is ambiguous, we must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute. (*Ibid.*) In interpreting ambiguous wording we are guided by the fundamental principle that courts construe those words in the context and with reference to the entire scheme of law of which they are a part. (*Ibid.*) In resolving statutory ambiguity courts also may be aided by the ostensible objects to be achieved by the legislation, the evils to be remedied, the legislative history, and public policy. (*Ibid.*) We start our review by examining the Act.

"Prior to 1984, review of a trial court order either directing disclosure of a public record or refusing disclosure was by appeal. In 1984, however, the Legislature substituted a writ procedure for the appellate process by amending section 6259 to provide as follows: 'In an action filed on or after January 1, 1985, an order of the court, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be

5

immediately reviewable by petition to the appellate court for the issuance of the extraordinary writ of review as defined in Section 1067 of the Code of Civil Procedure.' " (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1332-1333.)

In 1990, the Legislature amended section 6259 again to "eliminate the reference to the 'writ of review,' and to provide instead that superior court orders under the [Act] 'shall be immediately reviewable by petition to the appellate court for issuance of an extraordinary writ.' " (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 111-112.) The Legislature made this change to expedite the review process and thereby make the appellate remedy more effective. (*Id.* at p. 112.) The 1990 amendment also added two new provisions: (1) that "a party" must file a petition for extraordinary writ within 10 days after receipt of notice of the trial court order; and (2) no stay of the trial court order shall be permitted "unless the petitioning party demonstrates it will otherwise sustain irreparable damage and probable success on the merits." (Stats. 1990, ch. 908, § 2, subd. (c), p. 3855.) A 1993 amendment later increased the time for filing the writ petition from 10 days to 20 days. (*Powers v. City of Richmond*, at p. 112, fn. 18.)

A petitioner must have standing in order to invoke the power of a court to grant writ relief. (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1232 (*Waste Management*).) "Code of Civil Procedure section 1086 expresses the controlling statutory requirements for standing for mandate: 'The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of *the party beneficially interested*.' " (*Brotherhood of Teamsters & Auto Truck Drivers v.*

6

*Unemployment Ins. Appeals Bd.* (1987) 190 Cal.App.3d 1515, 1521.) Code of Civil Procedure section 1069, governing certiorari proceedings (Code Civ. Proc., § 1067), similarly requires the petition be made by "the party" beneficially interested.

Despite the clear references in these statutes to "the party," our high court noted it is well established that one who petitions for an extraordinary writ need not have been a party to the action below if the one seeking relief demonstrates a beneficial interest in the litigation or is affected by the outcome. (*Peery v. Superior Court* (1981) 29 Cal.3d 837, 841 (*Peery*).) In other words, our high court rejected the notion that the statutory reference to "the party" in Code of Civil Procedure sections 1086 and 1069 necessarily referred to the actual parties to the action. (*Peery*, at p. 841.)

"The requirement that a petitioner be 'beneficially interested' has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796.) The petitioner's interest must be direct and substantial. (*Waste Management*, *supra*, 79 Cal.App.4th at p. 1233.) Writ relief is not available if the petitioner gains no direct benefit from the writ's issuance, or suffers no direct detriment from its denial. (*Id.* at p. 1232.)

Additionally, the holder of the attorney-client privilege has standing to assert the privilege in a proceeding to prevent disclosure and there is no need to intervene to become an actual party to the lawsuit in order to be able to assert the privilege. (*Mylan Labs. Inc. v. Soon-Shiong* (1999) 76 Cal.App.4th 71, 80.) While the holder of the

7

protection from disclosure granted by the attorney work product doctrine is the attorney, the client has standing to assert the work-product protection on behalf of the attorney if the attorney is absent. (*Fellows v. Superior Court* (1980) 108 Cal.App.3d 55, 64-65.)

Here, the League asserts the e-mails ordered to be disclosed by the trial court are protected by the attorney-client privilege and attorney work product doctrine. Thus, as a general matter, the League should have standing to file the instant petition as it has an obvious interest in protecting from disclosure alleged confidential communications. Without any analysis, SDOG assumes the reference to "a party" in subdivision (c) of section 6259 refers to an actual party to the action rather than a real party in interest. Because the League failed to intervene in the action to become an actual party, SDOG asserts the League lacks standing to file the instant writ petition. We reject this assertion.

The Legislature is presumed to be aware of existing laws and judicial decisions and to have enacted or amended statutes in light of this knowledge. (*People v. Overstreet* (1986) 42 Cal.3d 891, 897.) As our previous discussion demonstrates, it has long been established that the right to seek writ review under general statutes is not limited to the actual parties to the action, but extends to anyone with a beneficial interest in the action. We have examined the legislative history for the 1990 amendment, but it provides no insight into the Legislature's use of the term "a party." (The League's request for judicial notice of legislative materials relating to section 6259 is granted.) Where, as here, "the language of a statute uses terms that have been judicially construed, ' "the presumption is almost irresistible" ' that the terms have been used ' "in the precise and technical sense

8

which had been placed upon them by the courts." ' " (*People v. Weidert* (1985) 39 Cal.3d 836, 844-846.)

Accordingly, we conclude the Legislature's reference to "a party" in the Act is not limited to the actual parties to the action, but includes nonparties with a beneficial interest in the litigation or who are affected by the outcome. Thus, we reject SDOG's assertion that the League lacks standing to challenge the trial court's order.

## II. *Merits*

A. The Act

The Act "provides for the inspection of public records maintained by state and local agencies" (*California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 822), and embodies "a strong policy in favor of disclosing public records." (*Dixon v. Superior Court* (2009) 170 Cal.App.4th 1271, 1275.) Because the disclosure of public records has the potential to impact individual privacy, any public records request involves two fundamental competing interests — prevention of secrecy in government and protection of individual privacy. (*City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1016-1017 (*City of San Jose*).) Thus, the right to disclosure of public records is not absolute. (*Id*. at p. 1017.) Among the materials expressly exempt from disclosure under the Act are records protected by the attorney-client privilege or attorney work product doctrine. (§ 6254, subd. (k); *Fairley v. Superior Court* (1998) 66 Cal.App.4th 1414, 1422, fn. 5.) The government agency opposing disclosure bears the burden of proving that one or more exemptions apply in a particular case. (*Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 476.) We independently review the trial

9

court's rulings on questions arising under the Act and will uphold the trial court's factual determinations if supported by substantial evidence. (*CBS Broadcasting Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 905-906.)

B. Public Records

The League contends the e-mail communications at issue are not public records because Goldsmith received the e-mails in his role as a member of the League's LAC and the LAC's role is to further the statewide mission of the League, a private organization. The term " '[p]ublic records' includes any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (e).) " ' "Any record required by law to be kept by an officer, or which he keeps as necessary or convenient to the discharge of his official duty, is a public record." ' " (*San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 774.)

We grant the SDOG's request for judicial notice of the San Diego City Charter (City Charter) and San Diego City Administrative Regulation Number 90.62. The City Charter states the City Attorney "shall be the chief legal adviser of, and attorney for the City" and that the City Attorney and his deputies must "devote their full time to the duties of the office and shall not engage in private legal practice during the term for which they are employed by the City . . . ."

Here, although the e-mails were sent to Goldsmith's personal account, Goldsmith deemed them as pertaining to his work as the City Attorney and as city business by forwarding them to his city account. This constitutes strong evidence that the e-mails,

10

retained by Goldsmith in his city account, pertain to his work as the City Attorney and constitute public records. Significantly, Goldsmith is a member of the League's LAC based solely on his role as the City's attorney. Presumably, any action Goldsmith took regarding the e-mails was based on his role as the City attorney to further not only the League's interests, but also the City's interests.

Additionally, during Goldsmith's tenure as City Attorney, the City enacted an administrative regulation, signed by Goldsmith and a number of other individuals, limiting use of the City's computer system to "work-related City business purposes only" and warning that "[p]ersonal files should not to be [*sic*] stored on City equipment." Knowing of this new policy, Goldsmith continued forwarding the e-mails from his personal account to his city account; again, presumably because they pertained to his work as the City Attorney. We are not persuaded by the League's argument that, because it is a private organization and LAC's role is to further the statewide mission of the League, Goldsmith's participation in LAC was not connected to his work as the City Attorney or city business. Accordingly, we reject the League's argument that the e-mails are not public records.

(As an aside, we note that our high court will be addressing the question whether written communications pertaining to city business, including e-mail and text messages, which are sent or received by public officials and employees on their private electronic devices using their private accounts, are not stored on city servers, and are not directly accessible by the City, are "public records" within the meaning of the Act. (*City of*

11

*San Jose v. Superior Court* (2014) 225 Cal.App.4th 75, review granted May 22, 2014, S218066.)

C.  Attorney-Client Privilege

1.  Legal Principles

The attorney-client privilege is "a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." (Evid. Code, § 954.)  A "client" within the meaning of the attorney-client privilege is "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal services or advice [from the lawyer in the lawyer's] professional capacity."  (Evid. Code, § 951.)  A " 'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of [the attorney-client] relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those present to further the [client's] interest . . . in the consultation or those to whom disclosure is reasonably necessary for transmission of the information or the accomplishment of the purpose for which the attorney is consulted." (Evid. Code, § 952.)  "[T]he privilege applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 371.)

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship."  (*Costco Wholesale Corp. v. Superior Court* (2009) 47

Cal.4th 725, 733 (*Costco*).) If the party claiming the privilege presents facts supporting a prima facie claim of privilege, "the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." (*Ibid.*) To evaluate whether the party claiming the privilege has made a prima facie showing, the focus is on the *purpose of the relationship* between the parties to a communication. (*Id.* at pp. 739-740.) "[W]hen the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." (*Clark v. Superior Court* (*Verisign, Inc.*) (2011) 196 Cal.App.4th 37, 51 (*Clark*).) "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." (*Costco*, at p. 733.)

An analysis of the attorney-client privilege begins with an identification of the attorney, the client and the communication sought to be protected. (See Evid. Code, §§ 950-952.) The fact the client or attorney intended the material transmitted to be confidential is not dispositive; rather, there must be a communication between attorney and client. (*Suezaki v. Superior Court* (*Crawford*) (1962) 58 Cal.2d 166, 176.) Stated differently, the attorney-client privilege attaches only if the information is transmitted "in the course of the attorney-client relationship." (Evid. Code, § 952.) "For example, the privilege is not applicable when the attorney acts merely as a negotiator for the client or

13

is providing business advice [citation]; in that case, the relationship between the parties to the communication is not one of attorney-client." (*Costco*, *supra*, 47 Cal.4th at p. 735.)

Although the Act allows in camera inspection of some documents claimed to be exempt, in camera review of information claimed to be privileged cannot be compelled by a trial court for the purpose of making an initial determination that a communication is subject to the claimed privilege. (§ 6259, subd. (a); Evid. Code, § 915, subd. (a); *Costco*, *supra*, 47 Cal.4th at p. 739.) Rather, the trial court must make an initial assessment of the facts, to determine whether the dominant purpose of the relationship was an attorney-client relationship. (*Costco*, at pp. 739-740.) When the dominant purpose of the relationship is "one of attorney-client, the communication is protected by the privilege." (*Clark*, *supra*, 196 Cal.App.4th at p. 51.)

To aid the trial court in determining the preliminary fact that a communication was made during the course of an attorney-client relationship, the party claiming the privilege may "*request* an in camera review of the communications to aid the trial court in making that determination, but the trial court [can]not *order* disclosure of the information over the . . . objection" of the party claiming the privilege. (*Costco*, *supra*, 47 Cal.4th at p. 740.) Additionally, once the trial court makes a tentative decision that a communication is not privileged, the party claiming the privilege may disclose the content of the communication in camera to attempt to prevent the disclosure. (*Costco*, at pp. 738-739.)

We note that allowing in camera review of alleged privileged communications based on the request of the party holding the privilege appears inconsistent with the

14

*Costco* court's statement that Evidence Code "section 915 prohibits disclosure of information claimed to be privileged in order to determine if a communication is privileged." (*Costco*, *supra*, 47 Cal.4th at p. 740.)  We reconcile these seemingly inconsistent positions by referring to the Court's stated holding "that a court may not *order* disclosure of a communication claimed to be privileged to allow a ruling on the claim of privilege . . . ." (*Id.* at p. 739, italics added.)  Thus, while a trial court may not *order* disclosure of a communication claimed to be privileged to allow a ruling on the claim of privilege, the holder of the privilege may *request* an in camera review of alleged privileged communications to aid the trial court in making the preliminary fact determination that a communication was made during the course of an attorney-client relationship or to attempt to prevent disclosure of the communication.

We review the trial court's conclusion that a document is subject to the attorney-client privilege to determine whether it is supported by substantial evidence. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1208.)  "When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it." (*D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 729.)

2.  Analysis

Here, the non-verified privilege log prepared by the City shows the disputed e-mails consist of: (1) e-mails from the League's purported legal assistant to various

15

members of the League; (2) an e-mail from a member of the League, David R. McEwen, to other members of the League; and (3) an e-mail from a member of the League's executive committee, Bob Hanson, to other members of the League. The League presented the sworn declaration of its general counsel, Patrick Whitnell, to support its claim that the e-mails at issue were covered by the attorney-client privilege. Whitnell stated that the LAC administers the League's Legal Advocacy Program. The LAC is composed of government attorneys, including Goldsmith. The LAC reviews and deliberates on pending appellate cases and makes recommendations to the League on whether the League should participate in a particular case. The League considers all communications between the LAC and Goldsmith to be covered by the attorney-client privilege. Whitnell did not state that some of the e-mails were sent by the League's legal assistant, nor did he state that McEwen and Hanson were members of the League or that these individuals were sending the communications in their capacity as an attorney for the League.

During oral argument, the trial court noted that Whitnell did not state in his declaration that the League's legal assistant sent some of the e-mails and found this "undermine[d] the foundation upon which the privilege [was] asserted . . . ." The attorney who prepared the privilege log and argued on behalf of the City, represented to the court that the League's legal assistant had sent some of the e-mails and that McEwen and Hanson were League members. After SDOG objected, the trial court declined to take judicial notice of the truth of counsel's representations. The trial court noted that the arguments made by the City were not accepted as fact by SDOG, and declined to place

16

any evidentiary value on the representations of counsel. Thereafter, the trial court declined the invitation of both parties to review the e-mails in camera and ruled that the City had not met its burden of showing the e-mails were privileged.

Employing the approach outlined above (*ante*, pt. II.C.1), we first examine the evidence presented to determine if the party claiming the privilege presented facts establishing a prima facie case supporting each element of the privilege. (*Costco*, *supra*, 47 Cal.4th at p. 733.) Our focus is on whether the dominant purpose of the relationship between the parties to the communication was one of attorney-client. (*Id.* at pp. 739-740.) As we shall explain, we conclude that substantial evidence supported the trial court's finding that the e-mails were not subject to the attorney-client privilege.

We first analyze the e-mails purportedly sent by McEwen and Hanson, as League members, to other League members. Although the League argued the attorney-client privilege attached to these e-mails, it failed to explain who was the attorney and who was the client in these communications. Although the League argued that the communications were intended to be confidential, there is absolutely no evidence these e-mails constituted confidential communications between an attorney and a client. (Evid. Code, § 954.) Accordingly, the trial court properly concluded the attorney-client privilege did not apply to these e-mails.

Turning to the e-mails purportedly sent by the League's legal assistant to other legal members, there is no competent evidence showing the person who sent the e-mails was the legal assistant to Whitnell (the attorney), that the person was acting as Whitnell's agent when she sent the e-mails to League members (the client), or that the e-mails, while

17

claimed to be confidential, were actual communications between an attorney and client. Because the evidence does not show these e-mails were confidential communications between an attorney and a client, the trial court properly concluded the attorney-client privilege did not apply.

In a supplemental declaration seeking a stay of the trial court's order rejecting the attorney-client privilege and an extension of time to file a writ petition, Whitnell stated the records ordered to be disclosed consisted of "confidential communications" between the League, through its LAC, of which Goldsmith is a member and himself though his legal assistant. Whitnell's claim that the e-mails were confidential communications between himself as counsel for the League/LAC and the League/LAC as the client, made *after* the trial court issued its ruling, does not advance the League's position that the trial court erred in ordering disclosure of the e-mails.

Our conclusion that substantial evidence supported the trial court's ruling that the attorney-client privilege did not attach to the e-mails does not end our analysis because the League contends the trial court erred by refusing to conduct an in camera hearing. As we noted, while the trial court cannot order disclosure of communications claimed to be covered by the attorney-client privilege to rule on the privilege, the holder of the privilege may request an in camera review of alleged privileged communications to aid the trial court in determining the preliminary fact that a communication was made during the course of an attorney-client relationship or to attempt to prevent disclosure of the communication.

18

Here, factual questions existed whether the person sending some of the e-mails was Whitnell's legal assistant acting as an agent for Whitnell. These factual questions could possibly be answered by an in camera review of the e-mails. Notably, the League as the purported client and holder of the privilege (Evid. Code § 953, subd. (a)), indicated it would present the e-mails to the court for in camera review. Although not relevant to the analysis, SDOG also requested that the court examine the e-mails in camera to resolve any issue regarding application of the attorney-client privilege.

Where such threshold factual questions exist and the holder of the asserted attorney-client privilege requests an in camera review, we conclude the trial court erred in not conducting the in camera review before ordering disclosure of the e-mails. Accordingly, as to the e-mails purportedly sent by Whitnell's legal assistant, the order is reversed and the matter remanded for an in camera hearing to determine whether these e-mails are protected by the attorney-client privilege.

D. Attorney Work Product Doctrine

1. Legal Principles

Documents privileged under the attorney work product doctrine are exempt from disclosure under the Act. (*County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 64.) The purpose of the attorney work product doctrine is to preserve the rights of attorneys in the preparation of their cases and to prevent attorneys from taking advantage of the industry and creativity of opposing counsel. (Code Civ. Proc., § 2018.020.) The doctrine, however, "is not limited to writings created by a lawyer in anticipation of a lawsuit. It applies as well to writings prepared by an attorney while

19

acting in a nonlitigation capacity." (*County of Los Angeles v. Superior Court* (2000) 82 Cal.App.4th 819, 833.)

The attorney work product doctrine absolutely protects from discovery writings that contain an "attorney's impressions, conclusions, opinions, or legal research or theories." (Code Civ. Proc., § 2018.030, subd. (a).) General work product (Code Civ. Proc., § 2018.030, subd. (b)), is entitled to conditional or qualified protection. (*Rumac, Inc. v. Bottomley* (1983) 143 Cal.App.3d 810, 815.) Whether specific material is protected work product must be resolved on a case-by-case basis. (*Dowden v. Superior Court* (1999) 73 Cal.App.4th 126, 135.) "In camera inspection is the proper procedure to evaluate the applicability of the attorney work product doctrine to specific documents, and categorize whether each document should be given qualified or absolute protection." (*Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 121 (*Wellpoint*).)

The person claiming protection under the attorney work product doctrine bears the burden of proving the preliminary facts to show the doctrine applies. (*Mize v. Atchison, T. & S. F. Ry. Co.* (1975) 46 Cal.App.3d 436, 447.) We review the trial court's conclusion that a document is protected by the attorney work product doctrine to determine whether it is supported by substantial evidence. (See *Collins v. State* (2004) 121 Cal.App.4th 1112, 1128; *Wellpoint*, *supra*, 59 Cal.App.4th at p. 114.)

2. Analysis

The privilege log prepared by the City indicated that the e-mails "discuss and/or attach legal briefs, take votes on proposed action, and discuss pending cases, legal issues

20

and questions." Whitnell's declaration similarly stated that "LAC members share and discuss legal impressions, conclusions, opinions, research and theories related to specific court decisions and cases on appeal that generally concern California cities." The evidence does not show that the e-mails contain the "impressions, conclusions, opinions, or legal research or theories" of Whitnell acting as the attorney for the League or LAC. (Code Civ. Proc., § 2018.030, subd. (a).) Nor does the evidence show the e-mails attached legal briefs or other materials prepared by Whitnell acting as the attorney for the League or LAC. Based on this evidence, the trial court properly concluded the e-mails were not protected under the attorney work product doctrine.

In his supplemental declaration, filed after the court issued its ruling, Whitnell stated the e-mails contained "his" work product. Whitnell's belated claim is dismaying. Nonetheless, because we are remanding this matter for an in camera review as to whether some of the e-mails are exempt based on application of the attorney-client privilege, in the interests of justice, the trial court should examine all of the e-mails to determine whether the e-mails or portions of the e-mails are protected by the attorney work product doctrine.

F. Summary

Goldsmith is an elected official and the chief legal adviser for the City and its departments and offices. The City Charter requires that he devote his full time to the duties of his office. The League is a nongovernmental association of California cities and their public officials working collectively to enhance the quality of life for all

21

Californians. The LAC makes recommendations to the League on whether the organization should participate in certain cases or provide funding for a case.

As the City Attorney for San Diego, Goldsmith is a permanent member of the LAC; however, there is no evidence showing Goldsmith's membership in the LAC is a required function of his job as the City Attorney. "The Act's core purpose is to prevent secrecy in government and contribute significantly to the public understanding of government activities." (*San Diego County Employees Retirement Assn. v. Superior Court* (2011) 196 Cal.App.4th 1228, 1244.) To the extent Goldsmith participates in the LAC to benefit the City and its residents, the public has a right to know the extent of his participation and his position on matters presented to him by the League. Thus, to the extent the e-mails are not exempt from disclosure by the attorney-client privilege or attorney work product doctrine, they should be produced.

While not an issue in this writ proceeding, the League asserted below that the e-mails are subject to associational privacy rights. We express no opinion on this issue other than to note the trial court may properly direct that any e-mails ordered to be disclosed be redacted to protect legitimate privacy interests.

DISPOSITION

Let a writ of mandate issue directing the superior court to do all of the following:

(1) vacate its order requiring disclosure of the e-mails;

(2) as requested by the League, review the e-mails purportedly sent by Whitnell's legal assistant in camera to evaluate whether they are exempt from disclosure by the attorney-client privilege; and

22

(3) as requested by the League, review all e-mails in camera to evaluate whether they are exempt from disclosure by the attorney work product doctrine.

The parties are to bear their own costs of appeal.  This court's order staying the proceedings in the superior court is vacated.


McINTYRE, J.

WE CONCUR:

McDONALD, Acting P. J.

AARON, J.