Filed 3/14/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SYNERGY PROJECT MANAGEMENT, INC., | A151199 |
| Plaintiff and Respondent, | |
| v. | (San Francisco City and County Super. Ct. No. CPF16514783) |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant and Appellant. | |
| | |
| GHILOTTI BROS., INC., | |
| Plaintiff and Respondent, | (San Francisco City and County Super. Ct. No. CPF16514835) |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant and Appellant. | |

The Subletting and Subcontracting Fair Practices Act (Pub. Contract Code, § 4100 et seq.) (Act), which governs public works projects, was enacted to protect the public and subcontractors from bidding practices that "often result in financial difficulties for subcontractors and poor workmanship on public improvements."[1] (*Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 660 (*Cal-Air Conditioning*).) To this end, section 4107, subdivision (a) (section 4107(a)) requires a

---

[1] All further statutory references are to the Public Contract Code unless otherwise noted.

prime contractor to obtain the consent of the awarding authority before replacing a subcontractor listed in the original bid, and it limits the awarding authority's ability to consent to specified circumstances. If the original subcontractor objects to being replaced, section 4107(a) requires the awarding authority to hold a hearing "on the prime contractor's request for substitution."

In this case, the City and County of San Francisco (City) entered a contract with prime contractor Ghilotti Bros., Inc. (Ghilotti) for a major renovation of Haight Street. Consistent with its accepted bid, Ghilotti entered a contract with subcontractor Synergy Project Management, Inc. (Synergy) for Synergy to perform excavation and utilities work. After Synergy broke five gas lines and engaged in other unsafe behavior, the City invoked a provision of its contract with Ghilotti to direct Ghilotti to remove Synergy from the project and substitute a new subcontractor. Under protest, Ghilotti terminated Synergy and identified two potential replacement contractors to the City, and Synergy objected to being replaced. A hearing was held under section 4107(a), and the hearing officer determined that Synergy's poor performance established a statutory ground for substitution.

Synergy and Ghilotti each filed a petition for a writ of administrative mandate in the trial court. Abandoning any challenge to the determination that Synergy's performance justified substitution, they contended the hearing officer lacked jurisdiction because Ghilotti had not made a "request" for substitution within the meaning of either section 4107(a) or the relevant provision of the City-Ghilotti contract. The court agreed and granted the petitions. On appeal, the City claims the court's ruling was erroneous, and we agree. Even though the statute contemplates that the prime contractor will normally be the party to seek substitution, the procedure followed here "complied in substance with every reasonable objective of the statute." (*Titan Electric Corp. v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 188, 208 (*Titan*).) Thus, the hearing officer had jurisdiction under the Act to issue a decision, and we need not address

2

whether jurisdiction separately existed under the City-Ghilotti contract.[2]  Accordingly, we reverse.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Ghilotti was the prime contractor for the City on a major project to renovate Haight Street.  Section 4.04(C) of the contract between the City and Ghilotti provides:

> When a Subcontractor fails to prosecute a portion of the Work in a manner satisfactory to the City, Contractor shall remove such Subcontractor immediately upon written request of the City, and shall request approval of a replacement Subcontractor to perform the work in accordance with Administrative Code section 6.21(A)(9) and the [Act], at no added cost to the City.

The contract between Ghilotti and Synergy incorporates the terms of the City-Ghilotti contract, and Synergy agreed that Ghilotti would "have the same rights and privileges as against [Synergy] as the [City] . . . has against [Ghilotti]" under the City-Ghilotti contract.

Work on the Haight Street project began in April 2015.  The hearing officer found that over the next five months, Synergy engaged in many unsafe practices that rendered its work "substantially unsatisfactory and not in substantial accordance with the plans and specifications" under section 4107(a)(7).  As summarized by the hearing officer, "Synergy caused five gas line breaks, at least four of which resulted from Synergy's unsafe practices. . . .  Synergy improperly shored trenches on multiple occasions, which could have led to street collapse, trench collapse, and the injury or death of workers or members of the public. . . .  Synergy's failure to properly store equipment led to a pedestrian trip and fall.  Its workers also engaged in highly dangerous conduct when they dangled the Synergy foreman by his ankles into an open manhole with no safety equipment or traffic control.  And there were many other safety problems."

---

[2] We deny the City's request that we take judicial notice of various documents, including legislative history of the Act, because they are unnecessary to our decision. (See *Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 713.)

On October 8, 2015, after Synergy caused the fifth gas line break, the City issued a stop-work order. In an October 9 letter, the City directed Ghilotti, in accordance with Section 4.04 of their contract, "to remove [Synergy] immediately" and "immediately . . . request approval of a replacement subcontractor to perform the Work."

In an October 14 letter, the City notified Synergy that it had "directed Ghilotti to remove Synergy and to substitute a replacement contractor" based on Synergy's unsatisfactory work. The City represented that in response, Ghilotti "stat[ed] that it will replace Synergy by either self-performing the work or by subcontracting with one or more entities that Ghilotti has not yet identified." Finally, the City stated that the letter constituted its notice to Synergy under section 4107 that Synergy would be replaced and that Synergy had five days to submit a written objection or else be deemed to "consent to the substitution."

On October 15, Ghilotti wrote to Synergy that "[a]s the City's directive does not provide [Ghilotti] with an alternative to removing [Synergy], to the extent that the City's allegations are valid, it is impossible for [Synergy] to cure the breaches and violations that the City has alleged. Accordingly, effective 48 hours after this notice, [Synergy's] right to prosecute and complete the work shall be deemed to be terminated." A few weeks later, Ghilotti notified the City that it "substantively and procedurally dispute[d] the validity of the City's replacement demand" but had "solicited proposals for the completion of Synergy's remaining scope of work." Ghilotti provided the names of two subcontractors it proposed as potential substitutes should it be "ultimately determined that the City's replacement demand is legally valid and that [Ghilotti] is required to replace Synergy pursuant thereto."

Meanwhile, Synergy responded to the City's October 14 letter by saying it "strongly object[ed] to [the City's] unilateral decision of subcontractor substitution" for numerous reasons. In response, the City scheduled an administrative hearing under section 4107(a), which occurred in December 2015. Only the City and Synergy appeared at the hearing, although Ghilotti was permitted to submit written objections and briefing.

4

Synergy and Ghilotti argued that the hearing officer did not have jurisdiction to hold a hearing under section 4107(a) because the City, not Ghilotti, had elected to replace Synergy. The hearing officer disagreed, concluding as follows:

> Section 4107(a)(7) anticipates that a public entity may initiate a proceeding based on its determination that a subcontractor's work was substantially unsatisfactory. Interpreting Section 4107(a)(7) in the manner proposed by Synergy and [Ghilotti] leads to an absurd result: a public entity having no control over the subcontractors working on its project. This interpretation does not comport with the language or intent of the statute. Moreover, the contract between [Ghilotti] and [the City] incorporates the Section 4107 procedure, which separately provides a basis for this proceeding. And finally, even if Section 4107 is not directly applicable and is not applied by virtue of the contract, Section 4107 does not prohibit an administrative proceeding offered for a subcontractor to object to a public entity's removal determination.

As mentioned above, the hearing officer also found by a preponderance of the evidence that Synergy's work on the Haight Street project was unsatisfactory and noncompliant under section 4107(a)(7). The hearing officer's January 2016 decision therefore upheld the City's "determination to remove Synergy as a subcontractor" on the project.

Synergy and Ghilotti each filed a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5 (section 1094.5) in the trial court, which consolidated the actions.[3] Neither petitioning party pursued a challenge to the hearing officer's factual findings involving Synergy's work on the project or his ultimate conclusion that Synergy's performance was "substantially unsatisfactory and not in substantial accordance with the plans and specifications" under section 4107(a)(7). Rather, Synergy and Ghilotti moved for issuance of a writ on the basis that the City had not proceeded in the manner required by law, because section 4107 did not authorize the City to remove a subcontractor except upon the prime contractor's request.

The trial court held two hearings on Ghilotti's and Synergy's motions in the fall of 2016. The court quickly rejected the notion that section 4107(a) alone gave jurisdiction

---

[3] Synergy and Ghilotti also sought relief under Code of Civil Procedure section 1085, but the trial court granted the petitions under section 1094.5.

5

to the hearing officer, and it focused on whether section 4.04(C) of the City's contract with Ghilotti conferred jurisdiction based on the provision's incorporation of the section 4107(a) procedure. After concluding that the hearing officer had jurisdiction under the contract only if "Ghilotti remove[d] Synergy and request[ed] a replacement of the subcontractor," the court determined that the key issue in the case was whether Ghilotti had taken these actions. The court allowed the parties to submit additional briefing on the issue, which it characterized as a factual dispute, and ultimately found that Ghilotti had not "requested the replacement of Synergy." Accordingly, the court entered judgments in Ghilotti's and Synergy's favor and issued writs "remanding the matter[s] to [the] City and commanding" it to vacate the hearing officer's decision "in its entirety." The City appealed from both judgments.

## II.
## DISCUSSION

### A. *Ghilotti Had Standing to Petition for Writ Relief.*

Initially, the City contends that the trial court erred by granting Ghilotti's petition for a writ of mandate because Ghilotti failed to demonstrate it had standing to bring the petition. Although Ghilotti did not file a respondent's brief and has not responded to this argument, we conclude that it had standing to bring the writ petition.

"A petitioner must have standing in order to invoke the power of a court to grant writ relief." (*League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976, 984.) Under Code of Civil Procedure section 1086, a petition warrants writ relief only if brought by a "party beneficially interested." Even though the statute refers to a "party," however, "it is well established that one who petitions for an extraordinary writ need not have been a party to the action below if the one seeking relief demonstrates a beneficial interest in the litigation or is affected by the outcome." (*California Cities*, at p. 985.)

To be "beneficially interested," a petitioner must generally have " 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] The petitioner's interest must be direct and substantial. [Citation.] Writ relief is not available if the petitioner

6

gains no direct benefit from the writ's issuance, or suffers no direct detriment from its denial." (*League of California Cities v. Superior Court*, *supra*, 241 Cal.App.4th at p. 985; see also *J & K Painting Co. v. Bradshaw* (1996) 45 Cal.App.4th 1394, 1399 [" 'technical, abstract[,] or moot right' " insufficient].)  "This standard 'is equivalent to the federal "injury in fact" test, which requires a party to prove by a preponderance of the evidence that it has suffered "an invasion of a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " ' " (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1053.)

Standing is a jurisdictional issue that may be raised at any time, including on appeal.  (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361.)  In its writ petition, Ghilotti alleged it had standing because it had "a substantial, direct, and beneficial interest in [its contract with the City] and its rights under [that contract] may be directly and adversely affected by" the hearing officer's decision.  The City's answer to the petition denied those allegations and raised Ghilotti's lack of standing as an affirmative defense.  Ghilotti did not present any evidence to the trial court on the issue, and the court did not explicitly rule on it.

Ghilotti had a beneficial interest in the outcome of the litigation sufficient to confer standing to petition for writ relief.  Ghilotti sought relief on the basis that the hearing officer did not have jurisdiction, an issue that implicates Ghilotti's right to oppose substitution of a subcontractor.  One basis on which the hearing officer found jurisdiction was that the City-Ghilotti contract "incorporate[d] the Section 4107 procedure."  In the hearing officer's view, the contract did not give Ghilotti a right to object to the City's decision that Synergy had to be replaced, a conclusion that could negatively impact Ghilotti in a future action involving the City.  Moreover, the hearing officer's determination that section 4107(a) itself conferred jurisdiction regardless of whether the prime contractor requested a substitution involved Ghilotti's ability to object to substitutions more generally.  Thus, Ghilotti separately had standing to challenge the hearing officer's jurisdictional determination because it directly and negatively affected

7

Ghilotti's interest in exerting control in the substitution process. (See *City of Redding, Cal. v. F.E.R.C.* (9th Cir. 2012) 693 F.3d 828, 835 [petitioners had standing to challenge regulatory proceeding in which they prevailed where agency's action was basis for contract lawsuits against them].) As a result, the trial court properly considered Ghilotti's writ petition on the merits.

   B. *The Substitution of Subcontractors Under the Act.*

  We now turn to the merits of the appeal, and we begin by discussing the pertinent statutory framework. The Act was enacted "to prevent 'bid shopping' and 'bid peddling' after the award of a public contract and to give the awarding authority the opportunity to investigate and approve the initial subcontractors and any replacements." (*Titan*, *supra*, 160 Cal.App.4th at p. 202, fn. omitted; § 4101; see also *Cal-Air Conditioning*, *supra*, 21 Cal.App.4th at p. 668.) "Bid shopping is the use of [a] low bid already received by the [prime] contractor to pressure other subcontractors into submitting even lower bids. Bid peddling, conversely, is an attempt by a subcontractor to undercut known bids already submitted to the [prime] contractor in order to procure the job." (*Southern Cal. Acoustics Co. v. C.V. Holder, Inc.* (1969) 71 Cal.2d 719, 726, fn. 7 (*Southern Cal. Acoustics*).) These practices cause "a profit squeeze on subcontractors" (*ibid.*), "result[ing] in poor quality of material and workmanship to the detriment of the public, depriv[ing] the public of the full benefits of fair competition among prime contractors and subcontractors, and lead[ing] to insolvencies, loss of wages to employees, and other evils." (§ 4101.)

  To prevent bid shopping and bid peddling, the Act confers on an awarding agency the power to " 'investigate and approve any subcontractor who is proposed to work on the project,' " whether that subcontractor is proposed in the original bid or as a substitute. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 540 (*Thompson*).) Under the Act, "a prime contractor that bids on a public works project must list in its bid each subcontractor who will perform work in an amount 'in excess of one-half of 1 percent of the . . . total bid.' " (*Titan*, *supra*, 160 Cal.App.4th at p. 202, quoting § 4104, subd. (a)(1).) Once its bid is accepted, the prime contractor cannot "[s]ubstitute a person as subcontractor in place of the subcontractor listed in the original

bid, except that the awarding authority . . . may . . . consent to the substitution of another person as a subcontractor" in nine listed situations (§ 4107(a)), all of which involve "the subcontractor's inability or unwillingness to perform the subcontract." (*E.F. Brady Co. v. M.H. Golden Co.* (1997) 58 Cal.App.4th 182, 188.) The provision relevant here permits the awarding authority to consent to substitution "[w]hen [it], or its duly authorized officer, determines that the work performed by the listed subcontractor is substantially unsatisfactory and not in substantial accordance with the plans and specifications, or that the subcontractor is substantially delaying or disrupting the progress of the work." (§ 4107, subd. (a)(7).)

Before "approv[ing] . . . the prime contractor's request for the substitution, the awarding authority, or its duly authorized officer, shall give notice in writing to the listed subcontractor of the prime contractor's request to substitute and of the reasons for the request." (§ 4107(a).) If the subcontractor timely submits "written objections to the substitution," "the awarding authority shall give notice in writing . . . to the listed subcontractor of a hearing by the awarding authority on the prime contractor's request for substitution." (*Ibid.*) In general, the results of a hearing under section 4107(a) are "binding on the parties unless found to be erroneous and set aside by a court of review" in a writ action under section 1094.5. (*Interior Systems, Inc. v. Del E. Webb Corp.* (1981) 121 Cal.App.3d 312, 318 (*Interior Systems*).)

Finally, section 4107, subdivision (b) (section 4107(b)) prohibits a prime contractor from "[p]ermit[ting] a subcontract to be voluntarily assigned or transferred or allow[ing] it to be performed by anyone other than the original subcontractor listed in the original bid, without the consent of the awarding authority, or its duly authorized officer."[4] While section 4107(a) limits the prime contractor's ability to "substitut[e] one subcontractor for another," section 4107(b) goes further and prohibits the prime

---

[4] Subdivision (c) of section 4107, which does not apply here, prohibits a prime contractor from subcontracting work for which the prime contractor did not originally designate a subcontractor unless a "significant change order" is involved. (*Affholder, Inc. v. Mitchell Engineering, Inc.* (2007) 153 Cal.App.4th 510, 519.)

9

contractor from "permit[ting] or allow[ing] the subcontract to be performed by anyone other than the original subcontractor listed in the bid. The main purpose is that the original subcontractor may not be replaced and his [or her] work done by another"—even the prime contractor itself—"without the consent of the [awarding] authority." (*Fred J. Early, Jr., Co. v. County Sanitation Dist.* (1963) 214 Cal.App.2d 505, 507-508.)

If a prime contractor violates the Act, it "violates [its] contract," and the awarding authority has discretion to either cancel the contract or assess a penalty of up to "10 percent of the amount of the subcontract involved." (§ 4110.) "This scheme plainly contemplates that the awarding authority will monitor the project during construction to ascertain the contractor's compliance with its contractual and statutory obligations." (*Thompson*, *supra*, 155 Cal.App.4th at p. 540.)

C.    *The Hearing Officer Had Jurisdiction Under Section 4107(a).*

The trial court granted the writ petitions on the ground that the hearing officer lacked jurisdiction to hold a hearing, a recognized basis for issuing an administrative writ. (See § 1094.5, subd. (b).) Specifically, the court concluded that jurisdiction did not exist under either section 4107(a) or the City-Ghilotti contract. We review the court's jurisdictional holding de novo. (*California Teachers Assn. v. Butte Community College Dist.* (1996) 48 Cal.App.4th 1293, 1299; see also *Duncan v. Department of Personnel Administration* (2000) 77 Cal. App.4th 1166, 1174.)

In concluding that the hearing officer lacked jurisdiction, the trial court made a factual finding that Ghilotti had not requested Synergy's replacement within the meaning of the contract. It did not make a factual finding about whether Ghilotti's actions amounted to a "request for substitution" under section 4107(a), likely because it characterized the City as having conceded that the statute alone did not confer jurisdiction.[5] For purposes of our analysis, which addresses only jurisdiction under the

---

[5] We agree with the City that the record does not establish such a concession. But even if it did, "we are not bound to follow the meaning of a statute (or the law) conceded by a party." (*Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 327.)

Act, we will assume without deciding that Ghilotti did not make a request for substitution within the meaning of section 4107(a), and we therefore need not resolve the parties' dispute involving the propriety of the court's factual finding about Ghilotti's actions.

The City argues that the hearing officer had jurisdiction under the plain language of the Act. When interpreting a statute, "we seek to effectuate the intent of the Legislature, following certain well-established rules. We first look to the ordinary meaning of the statutory language, which controls if it is without ambiguity or uncertainty. [Citation.] Such plain meaning, however, is discerned by reading the statute in context, and '[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*Titan*, *supra*, 160 Cal.App.4th at pp. 203-204.)

We agree with Synergy that the case law reflects "a consistent fact pattern" of the prime contractor, not the awarding authority, seeking substitution, and we are willing to grant that section 4107(a)'s references to a "request" by the prime contractor contemplate this will be the normal situation. But this does not establish that the prime contractor must always request substitution for there to be jurisdiction for a hearing under section 4107(a). "Rather, the failure to literally comply with an obligatory statutory procedure, such as that of section 4107, is valid if the procedure used complies in substance with all reasonable objectives of the statutory scheme." (*Titan*, *supra*, 160 Cal.App.4th at p. 205; *Cal-Air Conditioning*, *supra*, 21 Cal.App.4th at p. 667; see also *Crane v. Board of Supervisors* (1936) 17 Cal.App.2d 360, 367 ["jurisdiction may not be made to depend upon a precompliance with acts which manifestly are immaterial to the foundational elements of jurisdiction"].) Thus, although Synergy accurately observes that courts generally do not insert words into a statute, "that maxim does not permit this court to ignore the broader goals of [section 4107]—particularly where the Legislature has codified those goals." (*JMS Air Conditioning and Appliance Service, Inc. v. Santa Monica Community College Dist.* (2018) 30 Cal.App.5th 945, 956 (*JMS Air*).)

11

In *Titan*, the Second District Court of Appeal applied the doctrine of substantial compliance to uphold the outcome of a section 4107(a) hearing (*Titan*, *supra*, 160 Cal.App.4th at p. 193), and we conclude the same result is warranted here. In that case, the prime contractor requested substitution, and the subcontractor objected and demanded a hearing. (*Ibid.*) In the meantime, the prime contractor hired another subcontractor who then completed the work before the hearing occurred. (*Ibid.*) On appeal, the original subcontractor contended that section 4107 "prohibited [the prime contractor] from replacing [it] before the [awarding authority] consented to the substitution, and that the [awarding authority] had no authority to consent to substitution after another subcontractor had completed the work." (*Titan*, at p. 203.) The Court of Appeal agreed with the original subcontractor "that the plain meaning of the statutory language, construed in context, contemplates that the awarding authority's consent to substituting *out* a listed subcontractor and substituting *in* a proposed replacement will occur *before* the prime contractor permits the replacement to perform any work." (*Id.* at p. 204.) The court nevertheless upheld the awarding authority's consent to the prime contractor's substitution request, concluding that "the procedure used complied in substance with every reasonable objective of the statute." (*Id.* at p. 208.)

As did the *Titan* court, we confront a situation that section 4107 "simply does not address": the awarding authority, rather than the prime contractor, seeking substitution. We therefore turn to determine whether the procedure used complied with the reasonable objectives of the statute, which include preventing bid shopping and bid peddling and protecting an awarding authority's control over the selection of subcontractors. (*Titan*, *supra*, 160 Cal.App.4th at pp. 193, 205.) There is no dispute for purposes of this appeal that Synergy performed substandard and unsafe work, yet for reasons that are unclear Ghilotti wanted to retain Synergy. Thus, no risk existed of bid shopping by Ghilotti, much less bid peddling by Synergy or another subcontractor. (See *id.* at p. 206.) And once the City elected under its contract with Ghilotti to force Ghilotti to remove Synergy for unsatisfactory work, another party's work on Synergy's portion of the project could not lawfully proceed without the City's consent. (See *id.* at p. 204.) The City's decision

12

to hold a hearing on its own initiative instead of waiting for Ghilotti to "request" substitution furthered the statutory objective of protecting public safety by giving the awarding authority control over which subcontractors work on a project. (See *id.* at p. 206; *Thompson*, *supra*, 155 Cal.App.4th at p. 540.)

Synergy responds that "[i]t is not within the spirit of the statute to use it to make a subcontractor vulnerable to unilateral, backdoor removal by the awarding authority. The statute is intended to do just the opposite: [p]rotect the subcontractor's right to perform the work, unless removed according to the process provided."[6] This focus on the protection the Act affords subcontractors is misplaced. True, the Act "confers the right on the listed subcontractor to perform the subcontract unless statutory grounds for a valid substitution exist," which "may be enforced by an action for damages against the prime contractor to recover the benefit of the bargain the listed subcontractor would have realized had [it] not wrongfully been deprived of the subcontract." (*Southern Cal. Acoustics*, *supra*, 71 Cal.2d at p. 727.) But this statutory right is not violated where a valid ground for substitution exists, as it concededly did here. (*Titan*, *supra*, 160 Cal.App.4th at p. 206; *Interior Systems*, *supra*, 121 Cal.App.3d at pp. 317-318.) Synergy does not explain how the fact that the City instead of Ghilotti was the party to initiate substitution otherwise impinged upon Synergy's rights. Moreover, the Act "is not solely, or even primarily, for the protection of private interests" (*R.M. Sherman Co. v. W.R. Thomason* (1987) 191 Cal.App.3d 559, 566), and it "protects subcontractors only to

---

[6] We note that the City did not "remove" Synergy from the project, Ghilotti did. Although the hearing officer characterized his decision as upholding the City's "determination to remove Synergy as a subcontractor" on the project, the question the decision addressed on the merits was whether a statutory basis for substitution existed, not whether the City had the power to remove Synergy itself. To the extent Synergy means to argue that the City-Ghilotti contract did not authorize the City to direct Ghilotti to terminate Synergy, this action is not the appropriate forum in which to resolve such issues. (See *JMS Air*, *supra*, 30 Cal.App.5th at pp. 958-959.) Otherwise, we construe the parties' arguments about whether the City could "remove" Synergy or request its "removal" to refer to the substitution process more generally. (See *Titan*, *supra*, 160 Cal.App.4th at p. 204 [any "distinction between 'substitution' and 'termination' [or removal] is not one drawn by the statute"].)

the extent that preventing bid peddling and bid shopping might protect them." (*JMS Air*, *supra*, 30 Cal.App.5th at p. 958, italics omitted.) In other words, the limited personal protection the Act gives subcontractors is hardly the statute's exclusive or even paramount objective.

More importantly, Synergy's interpretation of the statute to authorize only prime contractors to seek substitution would undermine the Act's overarching purpose of protecting the public. To accept Synergy's interpretation, we would have to conclude that unless a prime contractor "requests" a substitution, the substitution of an underperforming subcontractor is simply barred, leaving an awarding authority with no expedient means of having another entity perform the work. This conclusion "is at odds with the Act's goal of *more* control for the awarding authority in selecting subcontractors." (*JMS Air*, *supra*, 30 Cal.App.5th at p. 956; see also *R.M. Sherman Co. v. W.R. Thomason*, *supra*, 191 Cal.App.3d at pp. 565-566 [Act not intended to protect prime contractors].) A far more reasonable reading, as proposed by the City, is that the statute refers to a prime contractor's request for substitution simply because "it is the prime contractor who is in contractual privity with the subcontractor," not the awarding authority, and thus the prime contractor will be the party who actually effectuates the subcontractor's removal and replacement with another subcontractor.

In sum, even though Ghilotti opposed substituting another subcontractor for Synergy, the hearing officer had jurisdiction to issue a decision under section 4107(a) because the procedures employed substantially complied with the Act's objectives. As a result, the trial court erred by granting Ghilotti's and Synergy's writ petitions, and the hearing officer's decision will stand. Our conclusion hardly marks the end of the underlying dispute, which we are told is the subject of at least one other pending lawsuit, and we express no opinion on what effect the hearing officer's decision will have in subsequent actions between the parties. (See *JMS Air*, *supra*, 30 Cal.App.5th at p. 959.)

14

## III.
### DISPOSITION

The judgments are reversed, and the matter is remanded to the trial court with directions to deny Ghilotti's and Synergy's writ petitions. The City is awarded its costs on appeal.

_____

Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

Sanchez, J.

*Synergy Project Management, Inc. v. City and County of San Francisco*  A151199

Trial Court:

Superior Court of the City and County of San Francisco


Trial Judge:

Hon. Harold E. Kahn


Counsel for Defendant and Appellant:

Dennis J. Herrera, City Attorney

Ronald P. Flynn, Chief Deputy City Attorney

Elaine M. O'Neil, Construction & Public Contracts Team Leader

Jaime Huling Delaye, Deputy City Attorney


Counsel for Plaintiff and Respondent Synergy Project Management, Inc.:

Matthew K. Yan, Moscone Emblidge & Otis LLP

Kris A. Cox, Moscone Emblidge & Otis LLP

Erin H. Reding, Moscone Emblidge & Otis LLP


*Synergy Project Management, Inc. v. City and County of San Francisco*  A151199