[No. C058858. Third Dist. Feb. 4, 2009.]

KATHRYN J. DIXON, Petitioner, v.
THE SUPERIOR COURT OF EL DORADO COUNTY, Respondent;
JEFF NEVES, as Sheriff-Coroner, etc., Real Party in Interest.

**COUNSEL**

Kathryn J. Dixon, in pro. per., for Petitioner.

No appearance for Respondent.

Louis B. Green, County Counsel, and Edward L. Knapp, Assistant County Counsel, for Real Party in Interest.

**OPINION**

**DAVIS, J.**—In this California Public Records Act case (CPRA; Gov. Code, § 6250 et seq.), we hold that coroner and autopsy reports that constitute investigations of a suspected homicide death—in which the prospect of

criminal law enforcement proceedings is concrete and definite—are public records that are exempt from disclosure under Government Code section 6254, subdivision (f) (hereafter section 6254(f)), of the CPRA. As relevant here, that subdivision exempts from public disclosure "investigatory . . . files compiled by any . . . local agency for . . . law enforcement . . . purposes."[1]

### BACKGROUND

The bullet-riddled body of Elizabeth Cloer was found in an open field in El Dorado County in June 1971. Thirty-one years later, DNA analysis of evidence from the scene produced a DNA profile apparently matching that of Phillip Arthur Thompson. In April 2008, Thompson was convicted of murdering Cloer.

Kathryn J. Dixon, the petitioner here, is a news reporter who covered the Thompson murder trial and intends to write a book about it. Pursuant to the CPRA, Dixon requested, before trial had commenced, the complete coroner and autopsy reports regarding Cloer from the El Dorado County Sheriff-Coroner. The request was denied.

Dixon then petitioned the El Dorado County Superior Court for a writ of mandate to obtain the requested reports. (§ 6259, subd. (a) [setting forth writ procedure for obtaining public records].) The superior court denied the petition after conducting an in camera review of the reports. (*Ibid.* [the superior court "shall decide the case after examining the [public] record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code [protecting informant identities, trade secrets and attorney work product] . . ."].) The superior court ruled the reports were exempt from public disclosure on two independent bases: (1) under section 6254(f), as "investigatory files of a local agency for law enforcement purposes which involve a definite prospect of criminal law enforcement" (underscoring omitted); and (2) under section 6255, finding that the public interest in nondisclosure clearly outweighed the public interest in disclosure.

Dixon has petitioned this court for a writ of mandate and we have issued an alternative writ.

### DISCUSSION

Dixon contends that the section 6254(f) exemption does not legally extend to coroner and autopsy reports. She also maintains that the trial court's ruling unconstitutionally restricts freedom of the press.

---

[1] Hereafter, undesignated section references are to the Government Code.

"A trial court's order . . . supporting [a public] official's refusal to disclose records under the [CPRA] is immediately reviewable by petition to the appellate court for issuance of an extraordinary writ. (§ 6259, subd. (c); *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1336 [283 Cal.Rptr. 893, 813 P.2d 240].) Factual findings made by the trial court will be upheld if based on substantial evidence. But the interpretation of the [CPRA], and its application to undisputed facts, present questions of law that are subject to [independent] appellate review. [Citation.]" (*BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 750 [49 Cal.Rptr.3d 519].)

1. *Section 6254(f) Exemption Regarding the Coroner and Autopsy Reports*

Dixon contends that the section 6254(f) exemption does not legally extend to coroner and autopsy reports because such reports are not exempt under any express provision of the CPRA, and because the coroner is not an agency designated by section 6254(f).

As we shall explain, these arguments require that we interpret the section 6254(f) exemption for "investigatory . . . files." We do so within the record-supported factual context that Cloer was found dead in an open field with bullet wounds to her body, that the coroner and autopsy reports constituted investigations of that death, and that Cloer's death led to a criminal trial for murder.

■ "Our objective in interpreting a statute is to determine legislative intent so as to effectuate the law's purpose. The first thing we do is read the statute, and give the words their ordinary meanings unless special definitions are provided. If the meaning of the words is clear, then the language controls; if not, we may use various interpretive aids." (*Schnyder v. State Bd. of Equalization* (2002) 101 Cal.App.4th 538, 545 [124 Cal.Rptr.2d 571], fns. omitted.) Here we find that the meaning of the pertinent words in section 6254(f) is clear when read in the context of other decisions that have construed section 6254(f).

■ The CPRA is designed to hold government accountable while still protecting individual privacy. (§ 6250; *Rackauckas v. Superior Court* (2002) 104 Cal.App.4th 169, 173 [128 Cal.Rptr.2d 234] (*Rackauckas*); *California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 831 [108 Cal.Rptr.2d 870] (*California State University*).) The CPRA embodies a strong policy in favor of disclosing public records. (*California State University, supra*, 90 Cal.App.4th at p. 831; *Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 476 [23 Cal.Rptr.2d 412].) Such records must be disclosed unless they come within a specific disclosure exemption. (*California*

*State University*, at p. 831; *Rogers*, at p. 469.) These exemptions are construed narrowly. (*California State University*, at p. 831; *Rogers*, at p. 469; *City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1018 [88 Cal.Rptr.2d 552] (*City of San Jose*); Cal. Const., art. I, § 3, subd. (b)(2).) But it has also been recognized in the section 6254(f) exemption context that there "is a strong government interest in preventing and prosecuting criminal activity . . . ." (*Rackauckas, supra*, at p. 173.)

Section 6254 sets forth several disclosure exemptions to the CPRA. The one at issue here is found in subdivision (f) and provides as pertinent: "(f) Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, . . . and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes."[2]

The reasons for this law enforcement investigation exemption are obvious. The exemption protects witnesses, victims, and investigators, secures evidence and investigative techniques, encourages candor, recognizes the rawness and sensitivity of information in criminal investigations, and in effect makes such investigations possible. (See *Haynie v. Superior Court* (2001) 26 Cal.4th 1061, 1070–1071 [112 Cal.Rptr.2d 80, 31 P.3d 760] (*Haynie*); *Rackauckas, supra*, 104 Cal.App.4th at pp. 175–177; *Williams v. Superior Court* (1993) 5 Cal.4th 337, 354, 355 [19 Cal.Rptr.2d 882, 852 P.2d 377] (*Williams*).)

██ As noted, Dixon contends that coroner and autopsy reports are not expressly exempted in section 6254(f) and that coroners are not police or law enforcement agencies. What Dixon leaves out of her argument, however, is that section 6254(f) also exempts from disclosure "any investigatory . . . files compiled by any other . . . local agency for . . . law enforcement . . . purposes."

No one can dispute that the office of the coroner, at a minimum, is a local agency. (See § 27460 et seq. [general duties of coroner].) The issue is whether the coroner, as part of his local agency duties, compiles investigatory files for law enforcement purposes. The answer is an emphatic yes.

---

[2] Although section 6254(f) specifically exempts law enforcement "investigatory . . . files" from disclosure, the section also requires law enforcement agencies to "make public" certain information derived from those exempt records pertaining to arrests made and complaints or requests for assistance received (§ 6254(f), first par.; § 6254(f)(1), (2), (3)), and to "disclose" certain information to victims of an incident or an applicable insurer (§ 6254(f)), unless to do so would endanger someone involved in the investigation or the investigation itself.

Section 27491, which specifies a coroner's duties regarding death investigations, provides the basis for this resounding affirmation, stating as pertinent: "It shall be the duty of the coroner to inquire into and determine the circumstances, manner, and cause of all violent, sudden, or unusual deaths; . . . known or suspected homicide . . . ; . . . deaths due to . . . gunshot, stabbing, cutting, . . . strangulation . . . ; death in whole or in part occasioned by criminal means; deaths associated with a known or alleged rape or crime against nature; . . . deaths under such circumstances as to afford a reasonable ground to suspect that the death was caused by the criminal act of another . . . . Inquiry pursuant to this section does not include those investigative functions usually performed by other law enforcement agencies." (We have quoted only the criminally related deaths specified in § 27491. Coroner and autopsy reports that have investigated non-criminally-related deaths are not at issue in this proceeding.)

It is through the coroner and autopsy investigatory reports that the coroner "inquire[s] into and determine[s] the circumstances, manner, and cause" of criminally related deaths. (§ 27491.) And officially inquiring into and determining the circumstances, manner and cause of a criminally related death is certainly part of law enforcement investigation. Our state Supreme Court recognized this fact nearly 90 years ago when it noted that "the primary purpose of [a coroner's] inquest under our laws is to provide a means for the prompt securing of information for the use of those who are charged with the detection and prosecution of crime." (*Mar Shee v. Maryland Assurance Corp.* (1922) 190 Cal. 1, 4 [210 P. 269].) Along these lines, the sentence in section 27491 that states, "Inquiry pursuant to this section does not include *those* investigative functions usually performed by *other* law enforcement agencies" (italics added), implicitly recognizes that a coroner's inquiry encompasses an investigative function performed by the coroner as a law enforcement agency.

■ That brings us to a common concern about interpreting the following language of the section 6254(f) investigatory file exemption: "any investigatory . . . files" "compiled by any . . . local agency" for "law enforcement" purposes. The concern is that this quoted language is subject to being interpreted too expansively in derogation of public record access. That concern has been addressed legally by several decisions with which we agree, and will be addressed factually by appellate court review of trial court factual findings. As for the legal point, the decisions with which we agree construe this investigatory file exemption as applying only when there is "a concrete and definite prospect" of "criminal law enforcement" proceedings. (*State of California ex rel. Division of Industrial Safety v. Superior Court* (1974) 43 Cal.App.3d 778, 784 [117 Cal.Rptr. 726]; see *Uribe v. Howie* (1971) 19 Cal.App.3d 194, 212–213 [96 Cal.Rptr. 493]; see also *Haynie, supra,* 26 Cal.4th at pp. 1068–1071; *Williams, supra,* 5 Cal.4th at pp. 354–356.)
■ Here substantial evidence supports the trial court's in camera-based

factual finding that the coroner and autopsy reports "constitute investigatory files of a local agency for law enforcement purposes which involve a definite prospect of criminal law enforcement." (Underscoring omitted.) The coroner and autopsy reports investigated the death of a person left in an open field with multiple bullet wounds, and this death led to a criminal trial for murder.[3]

Dixon cites to *People v. Williams* (1959) 174 Cal.App.2d 364 [345 P.2d 47] and *People v. Wardlow* (1981) 118 Cal.App.3d 375 [173 Cal.Rptr. 500] for the unremarkable proposition that an "autopsy report is a record that the coroner is required to keep [citation] and is therefore, a public record [citations]." (*Williams, supra,* at p. 390; accord, *Wardlow, supra,* at p. 388.) No one disputes this. Indeed, no one could dispute this. The CPRA defines " '[p]ublic records' " as including "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (e).) The question is not whether coroner/autopsy investigatory reports are public records, but whether, in certain circumstances, they are exempt from public disclosure under a particular CPRA exemption provision.

Dixon then presses this point a step further by citing an older decision from this court, *Walker v. Superior Court* (1957) 155 Cal.App.2d 134 [317 P.2d 130], and arguing there is a common law right to access coroner and autopsy reports. *Walker* stated that an "autopsy report is a record that the coroner is required to keep and is therefore a public record which a citizen may inspect." (*Walker, supra,* 155 Cal.App.2d at p. 139.) In *Walker,* however, it was a criminal defendant who sought discovery of the autopsy report by

---

[3] Dixon's view of the section 6254(f) exemption for coroner investigatory files, on the other hand, is too narrow in arguing that a coroner, in performing coroner duties under sections 27463 and 27463.5, is not an "agency" engaged in law enforcement purposes. Section 27463 specifies that a coroner shall keep an official register of deaths, and section 27463.5 allows for an official file in lieu of the register. These two sections generally set forth informational duties. The pertinent statute here on coroner duties, as we have discussed, is section 27491, which requires coroners to inquire into and determine the circumstances, manner and cause of all violent, sudden, or unusual deaths. Our interpretation of the section 6254(f) investigatory file exemption is confined to coroner and autopsy reports which, like here, inquire into and determine the circumstances, manner and cause of a suspected homicide death where there is a concrete and definite prospect of criminal law enforcement proceedings.

Nor does our interpretation of the section 6254(f) exemption for coroner investigatory files run afoul of Proposition 59, a 2004 constitutional amendment that added section 3 to article I of the state Constitution. This amendment states that a "statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access [to government information], and narrowly construed if it limits the right of access" (Cal. Const., art. I, § 3, subd. (b)(2)); but, as the amendment adds, "[t]his subdivision does not repeal or nullify, expressly or by implication, any constitutional or statutory exception to the right of access to public records . . . that is in effect on the effective date of this subdivision, including, but not limited to, any statute protecting the confidentiality of law enforcement and prosecution records" (*id.,* subd. (b)(5)).

contending "that the autopsy report is a public document and he therefore [wa]s entitled to a copy of it as a matter of right." (*Walker, supra*, at p. 138; see *id.* at p. 135.) Furthermore, *Walker* predated the CPRA, and the statutes upon which *Walker* relied for its "citizen" statement were repealed in the wake of the CPRA. (155 Cal.App.2d at pp. 138–139 [Gov. Code, former § 1227; Code Civ. Proc., former §§ 1888, 1892].) In any event, as stated in *Walker*, one of these former statutes provided that "every citizen ha[d] the right to inspect and take a copy of any public writing *except as otherwise provided by statute.*" (*Id.* at p. 139, italics added [referring to Code Civ. Proc., former § 1892].) Similarly, under the CPRA, every citizen has a right to inspect and take a copy of coroner and autopsy reports except as otherwise provided by statute (here, the "otherwise" is provided by the § 6254(f) exemption for investigatory files compiled for law enforcement purposes).

For all these reasons, we conclude that the coroner and autopsy reports involving the death of Elizabeth Cloer are exempt from public disclosure under the section 6254(f) CPRA exemption for local agency investigatory files compiled for law enforcement purposes. This exemption applies because these reports constitute an investigation of a death that was a suspected homicide in which the prospect of criminal law enforcement proceedings was concrete and definite.

## 2. *Freedom of the Press*

As a journalist, Dixon claims that denying her access to the coroner and autopsy reports unconstitutionally restricts press freedom.

■ This claim can be rejected in short order. It is irrelevant that the party requesting the public records is a newspaper or other form of media, because it is well established that the media has no greater right of access to public records than the general public. (*City of San Jose, supra*, 74 Cal.App.4th at p. 1018; *California State University, supra*, 90 Cal.App.4th at p. 831; *Freedom Newspapers, Inc. v. Superior Court* (1986) 186 Cal.App.3d 1102, 1109–1110 [231 Cal.Rptr. 189].)[4]

---

[4] In light of our resolution, we need not consider the superior court's alternative basis for nondisclosure: section 6255, subdivision (a), by which the court found the public interest in nondisclosure outweighed the public interest in disclosure. Nor need we address Dixon's argument about possible redaction; in any event, Dixon failed to note in this argument that she had requested "the complete coroner and autopsy report." (Italics added.)

### DISPOSITION

The petition for extraordinary writ is denied along with petitioner's September 26, 2008, motion to unseal the augmented record. The alternative writ is discharged. Each party shall pay its own costs. (§ 6259, subd. (d).)

Scotland, P. J., and Cantil-Sakauye, J., concurred.

Petitioner's petition for review by the Supreme Court was denied May 13, 2009, S171241.