Filed 2/6/23 (unmodified opn. & previous mod. order attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MUSTAFA EDAIS et al.,<br><br>      Petitioners,<br><br>      v.<br><br>SUPERIOR COURT FOR THE COUNTY OF SAN MATEO,<br><br>      Respondent;<br><br>ROBERT FOUCRAULT et al.,<br><br>      Real Parties in Interest. | A164947<br><br>(San Mateo County<br>Super. Ct. No. 21CIV04737) |
| MUSTAFA EDAIS et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>ROBERT FOUCRAULT et al.,<br><br>      Defendants and Respondents. | A165208<br><br>**ORDER MODIFYING OPINION; AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT[1\*]:**

        It is ordered that the opinion filed herein on January 17, 2023, be modified as follows.

        1.      The sentence in footnote 6, on page 15, that starts with "Here, the court has already ordered the unredacted Investigation Report . . ." shall be modified to read:

---

[\*]  Tucher, P.J., Fujisaki, J., and Petrou, J. participated in the decision.

1

Here, the court has already ordered the unredacted Investigation Report to be produced to petitioners under a protective order and no party has sought review of this portion of the court's order, but the trial court should carefully consider Civil Code section 56.10, subdivision (b)(8) if other requested documents include information that the Coroner's Office obtained from Munir's health care providers, or if other persons request that the Coroner's Office disclose to them the unredacted Investigation Report.

2.     On page 17, the following shall replace ". . . we know of no comparable statute protecting the other documents petitioners seek.[7]":

". . . we know of no comparable statute protecting the other documents petitioners seek, except to the extent they contain information provided by Munir's health care providers.[7]"

3.     In footnote 7, on page 17, the following shall be added to the end of the footnote, after ". . . [discussing Civ. Code, § 56.10, subd. (b)(8)].)":

The Coroner's Office has argued, in a petition for rehearing, that medical information in the Investigation Report is protected under Civil Code section 56.10, subdivision (b)(8), and is thus exempt from disclosure under Government Code sections 7927.705, 7927.700, and 7922.000. ~(PFR at 7)~ Nothing in our opinion should be understood as holding otherwise.  We expressly reserve that issue because we need not decide it; the trial court ordered that the entire Investigation Report, including any medical information in it, be disclosed to petitioners' representatives under a protective order, and the Coroner's Office did not seek review of that order.  Petitioners, though, have successfully challenged that portion of the order that denies their CPRA petition *in its entirety* and requires judgment to enter in favor of the Coroner's Office based on the mistaken view that *no portion* of the Investigation Report is subject to release under the CPRA.

These modifications do not effect a change in the judgment.

Real Parties in Interest/Respondent's petition for rehearing is denied.

Dated:_____                    _____ P.J.

*Edais et al. v. Superior Court / Edais et al. v. Foucrault et al.* (A164947/A165208)

2

Trial Court:      San Mateo County Superior Court

Trial Judge:      Hon. Robert D. Foiles

Counsel:          Mackenzie & Albritton, Mark L. Mosley for Plaintiff and
                  Appellant

                  John D. Nibbelin, County Counsel, Brian E. Kulich, Chief
                  Deputy for Defendant and Respondent

*Edais et al. v. Superior Court/Edais et al. v. Foucrault et al.* (A164947/A165208)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MUSTAFA EDAIS et al.,<br><br>    Petitioners,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br><br>    Respondent;<br><br>ROBERT FOUCRAULT, as Coroner, etc., et al.,<br><br>    Real Parties in Interest. | A164947<br><br>(San Mateo County<br>Super. Ct. No. 21CIV04737) |
| MUSTAFA EDAIS et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>ROBERT FOUCRAULT, as Coroner, etc., et al.,<br><br>    Defendants and Respondents. | A165208<br><br>**ORDER MODIFYING OPINION; CHANGE IN JUDGMENT** |

**THE COURT[2\*]:**

It is ordered that the opinion filed herein on January 17, 2023, be modified as follows. The entire Disposition will be replaced to read:

> Let a peremptory writ of mandate issue directing respondent court to vacate its April 4, 2022 order to the extent it (1) finds that petitioners limited their CPRA request to certain photographs and the

---

\* Tucher, P.J., Fujisaki, J., and Petrou, J. participated in the decision.

1

Investigation Report; (2) finds that the records sought are not public records and/or are exempt from disclosure under the CPRA; and (3) denies the Petition in its entirety. The portion of the April 4, 2022 order that declines to award attorney's fees and costs to petitioners is reversed. The matter is remanded to the trial court for further proceedings and issuance of a new order consistent with this opinion. Petitioners are awarded costs in the writ proceeding and the appeal. (Cal. Rules of Court, rules 8.278(a), 8.493(a).)

This modification changes the judgment.


Dated:_____        _____ P.J.

*Edais et al. v. Superior Court/Edais et al. v. Foucrault et al.* (A164947/A165208)

Trial Court:       San Mateo County Superior Court

Trial Judge:      Hon. Robert D. Foiles

Counsel:          Mackenzie & Albritton, Mark L. Mosley for Plaintiff and
                  Appellant

                  John D. Nibbelin, County Counsel, Brian E. Kulich, Chief
                  Deputy for Defendant and Respondent

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MUSTAFA EDAIS et al., <br><br>    Petitioners, <br><br>    v. <br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY, <br><br>    Respondent; <br><br>ROBERT FOUCRAULT, as Coroner, etc., et al., <br><br>    Real Parties in Interest. | A164947 |
| MUSTAFA EDAIS et al., <br><br>        Plaintiffs and Appellants, <br><br>v. <br><br>ROBERT FOUCRAULT, as Coroner, etc., et al., <br><br>    Defendants and Respondents. | A165208 <br><br>(San Mateo County <br>Super. Ct. No. 21CIV04737) |

Thirty-two-year-old Munir Edais died of suicide by hanging at 2:41 a.m. on January 21, 2020, according to an autopsy report prepared by the San Mateo County Coroner's Office (Coroner's Office). The decedent's parents, petitioners Mustafa and Majeda Edais (together, petitioners), distrust this conclusion. To investigate the possibility of foul play, they hired Judy Melinek, M.D., a certified forensic pathologist, to undertake a forensic autopsy review. The primary question before the court today is the extent to which Coroner's Office records that Dr. Melinek needs to conduct this review

1

must be released to her under the California Public Records Act (CPRA or Act). (See Gov. Code, §§ 7920.000 et seq.; all unspecified statutory references are to this code.)[3] We conclude the records in question are public records and may not, for the most part, be withheld.

## BACKGROUND

Evidence submitted to the superior court establishes the following facts. Munir Edais was a Los Gatos police officer, on his way to work the night shift at 6 p.m. on January 19, 2020. The day before, he had confronted Eman Edais, his wife of six months, with his suspicion that she was being unfaithful, and he told her he intended to seek a divorce. As he drove to work on January 19, Munir[4] discussed this intention on a call with his sister, with whom he was close, but then he uncharacteristically failed to respond to the multiple voice and text messages she left over the next 36 hours.

In the early morning hours of January 21, 2020, Eman called 911 to report Munir had hanged himself in their apartment. When Eman placed her 911 call, a third person may have been present in the apartment. According to a forensic audio analyst hired by petitioners, the sound of a whispered voice can be detected in the background on an enhanced audiotape of the 911 call. The Daly City Police Department responded to the call, and soon summoned personnel from the Coroner's Office to the Edais's home. The

---

[3] Former Government Code sections 6250 et seq., enacted in 1981, was repealed effective January 1, 2023 and replaced by a new Government Code sections 7920.000 et seq. addressing the same subject matters. (Stats. 2021, ch. 614.) (See The People's Business A Guide to the California Public Records Act (2022) Appendix 2, pp. 83–88 <https://www.calcities.org/resource/the-people's-business-a-guide-to-the-california-public-records-act> (as of Jan. 13, 2023).)

[4] We use first names only to avoid confusion and intend no disrespect.

2

Coroner's Office examined and photographed the scene, interviewed Eman, and took custody of Munir's body. Neither the police department nor the Coroner's Office, in the reports they prepared, identify a third person as having been present.

On March 22, 2020, after conducting an autopsy, the Coroner's Office published a report classifying Munir's death a suicide.

A forensic autopsy review is common where bereaved family members have unanswered questions about an official autopsy report. According to Dr. Melinek, who has conducted many such studies, a forensic autopsy review requires examination of scene photographs, autopsy photographs, various reports (e.g., the autopsy report and death scene investigation report), all notes and recordings taken by the coroner's investigator who examined the scene and by the forensic pathologist who examined the body, and recuts of microscopic slides of any tissues retained. Petitioners sought the required records informally and then, on April 22, 2021, served a formal CPRA request on Robert Foucrault, in his capacity as San Mateo County Coroner.

Petitioners' CPRA request sought "all DOCUMENTS received or generated by, or currently in the possession of, the [Coroner's] Office in connection with the death of Munir Edais." The request defined "DOCUMENTS" broadly, to include photographs, video recordings, "and all other electronically stored information." For physical evidence that could not be reproduced, petitioners requested an appointment for Dr. Melinek or her designee to inspect the evidence. And petitioners offered, in making their CPRA request, to have all the requested materials sent directly to Dr. Melinek, who agreed to return or destroy them at the conclusion of her assignment.

3

In response to this CPRA request, the Coroner's Office produced, for the second time, copies of several reports it had previously provided—the summary Report of Investigation (Coroner's Report), a Pathology Report, and a Forensic Laboratory Report (Toxicology Report). But it declined to provide photographs of the scene or the autopsy and declined to provide the full Summary and Investigation Notes Report (Investigation Report) prepared by the coroner's investigator, explaining that the decedent's widow had not consented to such disclosure.

Petitioners then sought a writ of mandate to compel production, as well as declaratory and injunctive relief. (See Gov. Code § 7923.000; Code Civ. Proc., §§ 525, 1060, 1085 et seq.) On September 3, 2021, they filed in the superior court a verified petition and complaint (Petition) against the Coroner and the County (together, respondents).[5] The Petition sought all of the documents requested in the CPRA request, plus attorney's fees. Respondents answered, and delivered for the trial court's in camera review copies of the autopsy photographs and the Investigation Report. The matter came on for hearing on March 25, 2022.

The Superior Court denied the requested writ "in its entirety" and ordered judgment to enter against petitioners. In an April 4, 2022 order, the court first found that the only documents petitioners sought were the Coroner's death-scene and autopsy photographs and an unredacted copy of the Investigation Report. The court determined respondents were "justified in refusing to make [these documents] public under the Public Records Act because they are not Public Records and/or . . . would be exempt from the

---

[5] Although the Coroner and the County are real-parties-in-interest in the writ proceeding before us, they are respondents in the appeal and were respondents in the trial court proceeding.

4

Public Records Act under Government Code Sections 6254(c), 6254(k), and 6276.34 [current sections 7927.700, 7927.705, and 7930.180, respectively]." And, the order continued, respondents "established that, under Government Code Section 6255 [current section 7922.000], the public interest served by not disclosing the record[s] clearly outweighs the public interest served by disclosure of the record[s]." As it made no order to release documents under the CPRA, the court declined to award petitioners attorney's fees or costs.

At the same time and in the same order in which it denied relief under the CPRA, the superior court on its "own motion" required respondents to produce to petitioners the requested photographs and Investigation Report. The court cited Code of Civil Procedure section 129, subdivision (a), which authorizes a court—on good cause and after notice to the district attorney—to order the release of a coroner's photos of the deceased. The April 4, 2022 order finds that respondents had agreed to provide petitioners the Investigation Report *and* the photographs under this code section even before the petition was filed, and that petitioners had subsequently notified the District Attorney's office they were seeking these documents. In ordering the photographs and Investigation Report turned over to petitioners, the court also ordered the parties to negotiate a protective order to prevent their further release.

On April 14, 2022, petitioners filed in this court a petition for extraordinary writ. (See Gov. Code, § 7923.500.) Petitioners ask us to direct the superior court to vacate its April 4 order and replace it with a new order that would direct the Coroner's Office immediately to release "*all* of the public records that it generated or received in connection with its investigation into" Munir's death. Petitioners contend that the trial court failed to comprehend the entire scope of documents they were seeking, that

5

respondents failed to establish any applicable exemption to disclosure under the CPRA, and that the order to release documents misapplied Civil Procedure section 129, incorrectly depriving petitioners of their right to attorney's fees under the CPRA.  (See *Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 427 (*Filarsky*) ["award of costs and attorney fees pursuant to [section 7923.115] is mandatory if the plaintiff prevails"].)  On May 27, 2022, we issued an order to show cause why the relief petitioners seek should not be granted.

Separately, petitioners have appealed the same April 4, 2022 order.  In their appeal, petitioners contend they had a right to attorney's fees since the superior court ordered partial disclosure of the documents their CPRA request had sought, and that the superior court erred in ignoring their request to compel discovery from the Coroner's Office on the scope of the relevant documents it retained.  Because the appeal challenges the same order as the writ and is now also ripe for decision, we consolidate the writ and appeal for purposes of this opinion.[6]

## DISCUSSION

"Openness in government is essential to the functioning of a democracy."  (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 328 (*International Federation*).)  To that end, the California Constitution declares, "The people have the right of access to information concerning the conduct of the people's business, and, therefore, . . . the writings of public officials and agencies shall be open to public scrutiny."  (Cal. Const., art. I, § 3, subd. (b)(1).)  A public agency seeking to withhold a record from

---

[6]  This consolidation is on the court's own motion, as we previously denied petitioners' request to consolidate before the appeal was fully briefed.

disclosure bears the burden of demonstrating that an exception to the CPRA's disclosure directive applies. (*International Federation*, at p. 329.) And in determining whether the CPRA applies, or whether an exemption has been established, the California Constitution instructs that a statutory provision "shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2); *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 617.)

Even as the Constitution and the CPRA mandate broad disclosure, the Legislature has also "been 'mindful of the right of individuals to privacy.' (§ [7921.000].) Set forth in the Act are numerous exceptions to the requirement of public disclosure, many of which are designed to protect individual privacy. (See[, e.g., §§ 7925.005, 7927.700, 7927.705].) In addition, a catchall exception applies if 'on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.' (§ [7922.000].) Unless one of the exceptions stated in the Act applies, the public is entitled to access to 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency.' (§ [7920.530]; § [7922.525].)" (*International Federation*, *supra*, at p. 329, footnote omitted.)

Where, as here, the trial court has refused to order records disclosed under the CPRA, the court's order is reviewable by petition for issuance of an extraordinary writ. (§ 7923.500; *Dixon v. Superior Court* (2009) 170 Cal.App.4th 1271, 1275 (*Dixon*).) " 'Factual findings made by the trial court will be upheld if based on substantial evidence. But the interpretation of the [CPRA], and its application to undisputed facts, present questions of law that are subject to [independent] appellate review.' " (*Ibid.*) "And when it comes

7

to balancing various interests under the CPRA, while we accept the trial court's express and implied factual determinations if supported by the record, 'we undertake the weighing process anew.'" (*Los Angeles Unified School Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 237 (*L.A. Unified*).)

I.

Petitioners first assign error to the trial court's conclusion that their CPRA request was narrowed in discussions among the parties, until it encompassed only the death-scene and autopsy photographs and the Investigation Report. Petitioners contend, persuasively, that the language of their CPRA request was much broader, seeking "all" documents relating to Munir's death that were received by, generated by, or in the possession of the Coroner's Office. Without disputing that point, respondents attempt to support the trial court's conclusion by pointing to language in Mustafa Edais's Claim Against the County of San Mateo (Claim), which he served before filing the Petition. The Claim states, "To complete her assignment, Dr. Melinek must examine the records of the Coroner's Office's investigation," in particular "the unredacted notes and reports prepared by the Coroner's Office's staff" and "all post-mortem photographs taken of both the Decedent and the scene of his death."

Respondents focus on the portion of the Claim's language mentioning particular documents, while ignoring the broader statement that Dr. Melinek requires "the records of the Coroner's Office's investigation" into Munir's death. We see no basis for concluding that by calling out specific documents of particular relevance, petitioners have abandoned the broader aspects of their Claim or their CPRA request. Respondents' argument also assumes, without evidence to support the assumption, that the Investigation Report and the reports previously produced to petitioners are the sum total of the

8

"notes and reports" the Coroner's Office has regarding Munir's death. Finally, respondents ignore that the Claim attaches a copy of the full CPRA request, asserts without qualification that "the Coroner's objections to [the] request are meritless," and nowhere purports to narrow the scope of the attached request. Under these circumstances, we conclude the Claim cannot reasonably be interpreted as having narrowed the CPRA request. We find, accordingly, no substantial evidence to support the trial court's conclusion that petitioners narrowed their claim to the specified documents that respondents had given the trial court to review.

## II.

Petitioners next assign error to the trial court's order to release the photographs and Investigation Report under Code of Civil Procedure section 129, subdivision (a) (section 129(a)). Petitioners correctly point out that section 129(a) applies on its face only to photographs and video recordings "of the body, or any portion of the body, of a deceased person, taken by or for the coroner at the scene of death or in the course of a post mortem examination or autopsy." Where it applies, section 129(a) prohibits copying or disseminating these sensitive images, except in specified circumstances including after a judicial finding of good cause. Respondents offer no counter to the argument that, because it concerns only photographs and videos of the decedent's body, section 129(a) provides no legal basis for compelling production of the Investigation Report. And indeed, we see no basis *under section 129(a)* for the trial court's order compelling production of that document. We will, however, conclude below that the Investigation Report must be disclosed under the CPRA, which not only provides a legal underpinning for the action the trial court has already taken but also has

9

consequences for appellant's right to recover attorney fees, as we see in part IV.

Petitioners contend that even as to the photographs section 129(a) does not support the court's order. Subdivision (b) of Code of Civil Procedure section 129 (section 129(b)) expressly states, "This section shall not apply to the making or dissemination of [autopsy photographs] for use in the field of forensic pathology." Petitioners assert that because Dr. Melinek is a certified forensic pathologist who intends to use the photographs for work in forensic pathology, the language of section 129(b) means that section 129(a) does not apply to any of the records petitioners seek. Respondents contest this point but, as we explain below, we see no need to resolve this aspect of the parties' dispute.

## III.

In petitioners' third assignment of error, they contend the trial court misapplied the CPRA in concluding the records requested were not public records and/or fell within one of the statutory exemptions.

## A.

We begin with the question whether the records petitioners seek are "public records" for purposes of the CPRA. Petitioners assert that they are, citing *Dixon*, *supra*, 170 Cal.App.4th 1271. We agree. *Dixon* held "coroner and autopsy reports that constitute investigations of a suspected homicide death—in which the prospect of criminal law enforcement proceedings is concrete and definite—*are public records* that are exempt from disclosure under Government Code section [7923.600]." (*Id*. at pp. 1273–1274; italics added.) Section 7923.600's exemption to disclosure is for investigatory files compiled for law enforcement purposes, and it is not at issue here; the important point for our purpose is the antecedent conclusion that "coroner

and autopsy reports . . . are public records." (*Dixon*, at pp. 1273–1274.) Given the CPRA's broad definition of "public records," *Dixon* called this an "unremarkable proposition" that "no one could dispute." (*Id*. at p. 1278; § 7920.530.) "The CPRA defines ' "[p]ublic records" ' as including 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics,' " the *Dixon* court explained. (*Dixon*, at p. 1278; § 7920.530.) As in our case, the serious question in *Dixon* was "not whether coroner/autopsy investigatory reports are public records, but whether, in certain circumstances, they are exempt from public disclosure under a particular CPRA exemption provision." (*Dixon*, at p. 1278.)

Respondents protest that the photographs are not public records because Code of Civil Procedure section 129, not the CPRA, governs their release. We think the issue of whether section 129(a) prevents respondents from releasing the photographs goes to whether the photographs fall within an exemption to the CPRA, a question to which we next turn. We see nothing in section 129(a) that prevents the conclusion, at the outset, that all of the documents in petitioners' CPRA request are public records.

B.

Three sections of the CPRA work together to exclude from disclosure certain postmortem and autopsy photographs. Section 7927.705 excludes "records, the disclosure of which is exempted or prohibited *pursuant to* federal or *state law*, including, but not limited to, provisions of the Evidence Code relating to privilege." (Italics added.) Section 7930.005 fleshes out the meaning of "pursuant to . . . state law." It provides, "[r]ecords or information not required to be disclosed pursuant to [Section 7927.705] may include, but shall not be limited to, records or information identified in statutes listed in

11

Chapter 2 (commencing with Section 7930.100)." A long list of statutes ensues. The list includes, at section 7930.180: "Postmortem or autopsy photos, Section 129, Code of Civil Procedure."

These statutory provisions together exempt from disclosure under the CPRA postmortem or autopsy photographs whose disclosure Code of Civil Procedure section 129(a) prohibits. Section 129(a) bars the Coroner's Office from disclosing its photographs depicting "the body, or any portion of the body, of a deceased person," unless a judge finds good cause or another exception to section 129(a) applies. To the extent section 129(a) conflicts with CPRA-mandated disclosure, the provisions of section 129(a) control. We know this because the first words of section 129(a) are "[n]otwithstanding any other law, . . . " and because a canon of statutory construction instructs that, where statutes conflict, " ' "more specific provisions take precedence over more general ones." ' " (*Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 305.) Section 129(a) is more specific, in that it applies only to a coroner's photographs and videos of a decedent's body, whereas the CPRA governs public documents generally.

The parties disagree as to whether the requested photographs fall within the scope of Code of Civil Procedure section 129(a)'s prohibition on disclosure, given section 129(b)'s language authorizing the "making or dissemination" of copies of a coroner's photographs "for use in the field of forensic pathology." (See Code Civ. Proc., § 129(b).) We need not resolve this dispute. The trial court ordered the photographs produced to petitioners under a protective order, respondents do not challenge that ruling and have already turned over the photographs,[7] and petitioners do not argue that the

---

[7] Petitioners contend there must be additional photographs responsive to their CPRA request beyond those reviewed by the trial court and released

protective order hampers their use of the photographs. Petitioners thus have already obtained the relief they sought regarding these particular documents, albeit on a different legal theory from the one they invoked. And, since we separately decide with regard to the Investigation Report that petitioners' CPRA request has merit, petitioners' request for attorney's fees seems not to hinge on the precise legal theory supporting the trial court's disclosure order. At some future point, if some other person were to seek access to these photographs, the difference in legal theories could become significant. Records released to one requestor under the CPRA generally must be made available to other members of the public. (See *City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1018.) Records released pursuant to section 129(a) are likely not subject to the same requirement. But what matters here is that petitioners received the photographs and respondents are not seeking their return, so there is nothing further to decide as to these documents. (See *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1170, fn. 11 [we " 'review the trial court's order, not its reasoning,' " and affirm if correct on any theory supported by record].)

C.

As to the Investigation Report, we consider the other specific exemption on which the trial court relied. Section 7927.700 exempts from disclosure "personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." In determining whether an invasion of personal privacy is "unwarranted," the court balances the public interest in disclosure against the individual's interest in privacy. (*International Federation*, *supra*, 42 Cal.4th at pp. 329–330; *L.A. Unified*,

---

under the protective order. If there are, then the trial court on remand can address in the first instance whether those, too, should be disclosed.

13

*supra*, 228 Cal.App.4th at pp. 240–241.) We undertake this balancing with respect to the Investigation Report specifically, but in so doing illustrate how, on remand, the trial court is to balance the competing public and private interests in disclosure when deciding whether to order the disclosure of other documents responsive to the CPRA request that have not yet been produced to it for inspection.

The public interest in release of these Coroner's Office documents is significant. "[T]he fact that a member of the public is interested in a matter does not, by itself, make it a matter of public interest." (*L.A. Unified*, *supra*, 228 Cal.App.4th at p. 248.) A matter is of public interest where "disclosure 'would contribute significantly to public understanding of government activities' and serve the legislative purpose of ' " 'shed[ding] light on an agency's performance of its statutory duties.' " ' " (*Id*. at p. 241.) Here, release of the Investigation Report will assist interested members of the public in assessing whether the Coroner's Office investigated Munir's death thoroughly and competently, as the document contains work product on which the Coroner's Office based the Coroner's Report it released to the public.

*L.A. Unified* instructs that the weight of the public interest " ' "is proportionate to the gravity of the governmental tasks sought to be illuminated and the directness with which the disclosure will serve to illuminate." ' " (*L.A. Unified, supra*, 228 Cal.App.4th at p. 242.) Here, the gravity of the governmental task looms large, as the requested documents will support (or fail to) the government's determination that Munir was not a homicide victim, but a suicide. The public interest in correctly distinguishing suicide from homicide is patent. It justifies even compromising the confidentiality of a patient's medical records. For example, a separate

14

provision of the civil code requires a health care provider to disclose medical information upon the request of a coroner investigating a death that "may involve . . . suicide[]" or is otherwise suspicious. (Civ. Code, § 56.10, subd. (b)(8).)[8] The requested information is also of a nature that should illuminate directly the quality of the Coroner's Office's work on this case. Petitioners' forensic pathologist has opined that the requested records are essential for her forensic review.

As against this weighty public interest in disclosure, the individual privacy interests are more elusive. Petitioners assert that Munir, because he is dead, no longer has privacy interests to protect. Respondents counter that the privacy of a decedent's family must also weigh in the balance. In the abstract, respondents may be right. "Family members have a personal stake in honoring and mourning their dead and objecting to unwarranted public exploitation that" intrudes upon their grief. (*National Archives and Records Admin. v. Favish* (2004) 541 U.S. 157, 168 (*Favish*).) For this reason, the common law has long recognized "a family's control over the body and death images of the deceased." (*Ibid.*)

---

[8] The Coroner's Office contends that Munir's medical information produced to it under this provision is exempt from disclosure under section 7927.705, which incorporates by reference other protections from disclosure in state law. Under Civil Code section 56.10, subdivision (b)(8), a "coroner shall not disclose the information contained in the medical record obtained pursuant to this paragraph to a third party without a court order . . . ." Here, the court has already ordered the unredacted Investigation Report to be produced to petitioners under a protective order, but the trial court should carefully consider this provision if other requested documents include additional information that the Coroner's Office obtained from Munir's health care providers, or if other persons request that the Coroner's Office disclose to them records containing Munir's medical information.

15

But respondents' argument ignores important facts. First, members of Munir's own family (his parents, supported by his sister) are the ones seeking these documents. It cannot be the role of the Coroner's Office to protect these family members from themselves. In assessing the weight of the family members' privacy interest, we consider it significant that three members of Munir's family believe their privacy interest pales in comparison to their interest in having these documents disclosed. (Cf. *Wessler v. United States Dept. of Justice* (S.D.N.Y. 2019) 381 F.Supp.3d 253, 259 (*Wessler*) [family members of deceased detainees " 'expressed gratitude' " for public disclosure of medical neglect in prisons].) To the extent the Coroner's Office is seeking to protect the privacy of Munir's widow, it is on somewhat firmer ground. Because Eman declined to provide the Coroner's Office with written authorization for the release of the requested documents we can infer that she opposes petitioners' request, but we have no affirmative statement from her on the subject. As the surviving spouse, she has certain rights with regards to Munir's remains and estate. (See, e.g., Gov. Code, § 27520 [right to request coroner to perform an autopsy]; Health & Saf. Code, § 7100 [right to make funeral arrangements and dispose of remains]; Prob. Code, § 6401 [right of intestate succession].) But so, too, do a decedent's parents have such rights, either behind or alongside the rights of a surviving spouse. (See, e.g., Gov. Code, § 27520 [parent may request, if no surviving spouse]; Health & Saf. Code, § 7100 [parent's priority below surviving spouse]; Prob. Code, § 6401 [parents and their issue to split decedent's separate property with surviving spouse].) Here, where the surviving spouse has made no affirmative request for privacy, where there is no evidence that disclosure will lead to public spectacle, and where other close family members uniformly favor disclosure and distrust the motives of the surviving spouse in failing to

16

agree, we assess the private interest in nondisclosure as somewhat attenuated.

A second important fact in assessing the weight of the individual privacy interest is that the documents we discuss here are not photographs and videos of the deceased, but technical documents such as coroner's notes and observations recorded in words and numbers. State law recognizes the extreme sensitivity of death-scene and autopsy photographs of the deceased, often protecting these images from disclosure (Code Civ. Proc., § 129(a)), but we know of no comparable statute protecting the other documents petitioners seek.[9] This is not to say that surviving family members retain no privacy interest in a document such as the Investigation Report, but any such interest is somewhat diminished, as compared to graphic and unsettling images of the deceased. (Cf. *Wessler*, *supra*, 381 F.Supp.3d at pp. 259–260 [decedents' family members have a moderate privacy interest in medical and autopsy records, "even if the records do not depict graphic death scene images as in *Favish*"].)

In *Favish*, the United States Supreme Court refused to order the release of death-scene photographs from a federal investigation into Vincent Foster's suicide, construing the federal Freedom of Information Act (FOIA) as recognizing a personal privacy right of surviving family members with respect to these images. (*Favish*, *supra*, 541 U.S. at pp. 160–161, 170.) Despite some factual similarities, *Favish* is of limited utility here. The California Supreme Court has warned that the FOIA provision "at issue in *Favish* is not comparable to" section 7927.700, and *Favish*'s "expansive view

_____

[9] As previously noted, state law also protects as particularly sensitive the decedent's medical information disclosed to the Coroner's Office, which should be separately considered. (See *ante*, at p. 15, fn. 6 [discussing Civ. Code, § 56.10, subd. (b)(8)].)

17

of the concept of personal privacy" may not carry over when interpreting the CPRA. (*International Federation*, *supra*, 42 Cal.4th at pp. 336–337, fn. 8.) In particular, the California Supreme Court warned against shifting to the person requesting public documents the burden of establishing a sufficient reason for disclosure. (*Ibid*.)

The California Supreme Court in *International Federation* illustrates the proper application of section 7927.700. The question before the Court there was whether the CPRA requires a city to disclose the names and salaries of all its employees earning at least $100,000 per year. (*International Federation*, *supra*, 42 Cal.4th at p. 327.) The city and unions representing public employees argued against disclosure, asserting the employees' right to financial privacy. (*Id*. at pp. 327–328.) The California Supreme Court rejected that argument. Although it recognized that individuals generally have a privacy interest in their own financial information, the Court observed that compensation of public employees has long been a matter of public record. (*Id*. at pp. 330–331.) This custom and practice means public employees cannot reasonably expect their salary information to remain confidential, and their privacy interest "is, accordingly, entitled to diminished weight in the balancing test we apply under section [7927.700]." (*Id*. at p. 331.) The Court then discussed the benefits of public disclosure, which enables citizens to review whether their money is being properly spent, before concluding: "The [c]ity and the [u]nions failed to present any evidence establishing that the [c]ity's consistent past practice of disclosing its employees' salaries created any safety or privacy problems for those employees that would outweigh the public interest in disclosure." (*Id*. at p. 337.)

The privacy interest here is similarly diminished and is outweighed by the public interest in disclosure. Dr. Melnick's unrebutted testimony was that "[i]t is common practice for coroners and medical examiners to permit release of records to outside forensic consultants to perform a secondary review of the medical evidence." The Coroner's Office has presented no evidence establishing that this common practice creates privacy problems for family members of the deceased, in this case or more broadly. Following *International Federation*, we accordingly conclude that the public interest in disclosing the Investigation Report—which will facilitate a forensic review that directly bears on how well the Coroner's Office has performed its duties—outweighs any individual privacy interest. Section 7927.700 does not exempt this document from disclosure.

### D.

Finally, respondents contend that the catchall exception of section 7922.000 protects from disclosure the documents petitioners request. Like section 7927.700, section 7922.000 requires us to balance the public interest served by disclosure against other interests. With the catchall exception, we ask whether the public interest served by disclosure is clearly outweighed by a *public* interest in not disclosing the records. (§ 7922.000.)

For the most part, respondents' discussion of a public interest in nondisclosure reiterates the private interests we analyzed with respect to section 7927.700. The only truly public interest they add into the mix is a concern that public disclosure of the requested records will chill cooperation from members of the public in future coroner's investigations. A coroner's ability to gain cooperation from the public is undoubtedly a significant public interest, but petitioners point out that the law gives coroners sweeping powers to control death scenes and the disposition of human remains while

19

completing their investigations, and that anyone who interferes with a coroner's investigation is chargeable with a misdemeanor. (Gov. Code, §§ 27491.2, 27491.3, subds. (a) & (c); Health & Saf. Code, § 7102). Petitioners also point out that the declarations of a Deputy Coroner and Supervising Deputy Coroner, which respondents submitted in opposing writ relief, are silent as to any such chilling effect. On this record, respondents have established no public interest served by withholding the requested documents that is any more substantial than the private interests we have already found insufficient under section 7927.700 with regard to the Investigation Report.

We have already found the public interest in disclosure to be significant since the Investigation Report is essential to a forensic review of the Coroner's Office's determination of the cause of Munir's death. We accordingly conclude that any public interest served by refusing to disclose it does not clearly outweigh this public interest in disclosure. (See *L.A. Unified*, 228 Cal.App.4th at p. 243.)

IV.

In their appeal, petitioners urge two ancillary points. They contend that the trial court's April 4, 2022 order erroneously identified respondents as the prevailing party and prevented petitioners from recovering attorney's fees or costs "pursuant to Government Code section [7923.115] or any other provision of law." They also contend that the trial court erred in ignoring their request to compel limited discovery from the Coroner's Office as to what responsive records exist and on what basis they are being withheld.

We will remand for the trial court to consider these issues anew in light of our conclusions above. We have determined the trial court erred in limiting petitioners' CPRA request to solely the Investigation Report and the postmortem and autopsy photographs. On remand, the trial court should

20

address petitioners' motion to compel discovery from the Coroner's Office in light of this conclusion. We have also determined that the trial court erred in refusing to order disclosure under the CPRA of, at least, the Investigation Report. This conclusion means that petitioners are entitled to reasonable attorney's fees and court costs. Section 7923.115 makes such an award "mandatory if the plaintiff prevails" in CPRA litigation. (*Filarsky*, *supra*, 28 Cal.4th at p. 427.) We accordingly vacate that portion of the April 4 order which denies petitioners' request for fees and costs.

## DISPOSITION

The judgment on the Petition is reversed, and the April 4, 2022 order is vacated to the extent it (1) finds that petitioners limited their CPRA request to certain photographs and the Investigation Report; (2) finds that the records sought are not public records and/or are exempt from disclosure under the CPRA; (3) denies the Petition in its entirety; and (4) orders petitioners to bear their own attorney's fees and costs. The matter is remanded to the trial court for further proceedings consistent with this opinion. Pursuant to California Rules of Court, rule 8.278(a), petitioners are awarded their costs on appeal.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

21

Trial Court:       San Mateo County Superior Court

Trial Judge:      Hon. Robert D. Foiles

Counsel:          Mackenzie & Albritton, Mark L. Mosley for Plaintiff and
                   Appellant

                   John D. Nibbelin, County Counsel, Brian E. Kulich, Chief
                   Deputy for Defendant and Respondent

*Edais et al. v. Superior Court / Edais et al. v. Foucrault et al.* (A164947/A165208)